[Civ. No. 15502.   Second Dist., Div. Three.   Nov. 20, 1946.]

CALIFORNIA CASUALTY INDEMNITY EXCHANGE (an Interinsurance Exchange), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA; MARGARET G. THOMPSON et al., Respondents.

Oliver & Corfman for Petitioner.

R. C. McKellips, John A. Rowe, Jr., and Edward A. Sarkisian for Respondents.

THE COURT.—The California Casualty Indemnity Exchange is the insurance carrier for Food Machinery Corporation and seeks by means of a writ of review to annul an award made by the Industrial Accident Commission, Panel Two (see Lab. Code, §§ 114, 115, as amended 1945), in favor of the dependents of the late Andrew Roberts Thompson, formerly employed by the Food Machinery Corporation.

From the findings of fact appearing in the report of the referee who heard testimony we glean the following: That Mr. Thompson "while employed as a tank assembler on July 26, 1943, at Riverside, California by Food Machinery Corporation, a corporation, sustained injury arising out of and occurring in the course of his employment, consisting of the occupational aggravation into a disabling condition of a pre-existent non-disabling tuberculosis. . . . The date is hereby determined to be July 26, 1943, which is the date upon which the employee first had knowledge that the disability from which he was suffering was traceable to his employment.

"Said employee died on January 28, 1944, the cause of death being advanced bilateral pulmonary tuberculosis. . . .

"Said injury caused temporary total disability beginning July 26, 1943 to and including January 28, 1944, the date of death, entitling the employee to $25.00 per week during said time. The total period of time, after deducting the waiting

period of seven days is 25-4/7 weeks, which is a total of $639.29. Said weekly benefit is based on maximum earnings.

"Applicant Margaret G. Thompson was a member of the employee's household in good faith.

"The applicants are entitled to the payment of or reimbursement for the reasonable value of self-procured medical treatment in an attempt to cure or relieve the employee from the effects of his injury.

"Said employee left surviving him, totally dependent, Ada P. Thompson and Roy Dale Thompson, the minor son of the parties, as well as Margaret G. Thompson, who are, in addition to the temporary total disability, entitled to a death benefit in the sum of $6000.00 payable at the rate of $25.00 per week beginning January 29, 1944, based upon maximum earnings.

"Ada P. Thompson is the natural mother of Roy Dale Thompson, a minor, and it is the judgment of this Commission that one-half of all benefits herein awarded should be paid directly to Ada P. Thompson for the benefit of herself and said minor child, to be received by her and disbursed in her discretion for such purpose, and the remaining one-half to Margaret G. Thompson.

"Statutory burial expense in a sum not to exceed $300.00 is payable to the person or firm entitled to receive the same. Jurisdiction is hereby reserved to determine the amount thereof and to whom payable in the event the parties are unable to agree thereon."

As a conclusion of law the referee determined that payments should be made to the dependents as indicated, and provided also for the payment of attorneys' fees.

When the report came before the Industrial Accident Commission sitting as Panel Two, it was adopted in its essential details by findings of fact entered by two members of the panel and an award was made according to the recommendation, with a proviso that the two items of $3,000 each, less the sum of $250 attorneys' fee, be paid to Ada Thompson and Margaret Thompson, respectively, in weekly installments of $12.50 each. It was also provided in the order that the defendants should make payment or reimbursement for the reasonable value of self-procured medical treatment, provision being also made for statutory burial expense in a sum not to exceed $300. The third member of the panel dissented from the decision.

The application for adjustment of the claim in this case stated that Mr. Thompson "sustained injury arising out of and in the course of the employment, as follows: While working in assembly pit, assembling machinery and was exposed to dust and paint fumes resulting in infection of throat and lungs, and activating pre-existing tuberculosis of the throat, larynx and lungs."

The only medical testimony produced at the hearing was given by Dr. Frank Porter Miller. He testified that he first saw Mr. Thompson on July 3, 1943, when he was sent to him by Dr. Irwin Miller "and we X-rayed him at that time and that confirmed the diagnosis, and I am a little hazy as to what took place in those three weeks [following], whether he was thoroughly convinced of his tuberculous condition or not because he didn't go under active management until the 7th of August, 1944, [1943]. At that time we followed the invincible rule of placing him in bed. He had extremely sore throat with considerable ulceration on either larynx. In addition to that he had rather wide-spr*ed* infection involving the upper two-thirds of either lung. As yet very little tissue destruction. He was placed in bed and was in bed continuously until his death. Treatment which we used was bed rest. He was given tuberculin and treatment to relieve the throat condition, which became progressively worse. The chest condition advanced a bit until it was only with great difficulty that he could swallow." He also testified that "as far as advanced manifestation of the disease, he would come under the classification laid down by the National Association as an advanced case because tuberculosis of the throat does not occur as an early manifestation," and further that "practically all of those cases have been active pretty nearly a year at least before they reach the point where they consult a physician." This same doctor furnished a written report on this case which was before the commission, in which he stated "I can only reiterate from the conclusions that we formulated at the last hearing. It was alleged by the applicant that the dust and fumes were a predisposing factor to his tuberculosis. In that, I am not in accord, as I do not believe the dust and fumes which are around the assembly line are excessive and furthermore they do not predispose to this form of pathology.

"I do feel that there is one factor that should receive con-

sideration. There is no question but what this man had an active tuberculosis for a number of months, antedating the cessation of work. It was my testimony at the hearing that the continuance of this work would naturally be an aggravating factor in his tuberculosis. In fact, for this condition to remain stationary or to improve, it would necessitate complete bed rest. Contrary to the bed rest is continuance on the job, which undoubtedly aggravated his condition."

In view of the statement of Dr. Miller that he did not believe that the dust and fumes constituted a predisposing factor to decedent's tuberculosis, counsel for the commission necessarily places his sole reliance for sustaining the decision of the panel upon the closing paragraph of the report which we have just quoted. His argument fails, however, in the light of decisions heretofore reached in this state and elsewhere.

In *G. L. Eastman Co.* v. *Industrial Acc. Com.* (1921), 186 Cal. 587 [200 P. 17], the court was considering a case in which an award of compensation was made by the Industrial Accident Commission and expressed itself as follows (p. 594): "If the disability, although arising from a chronic heart trouble, was brought on by any strain or excitement incident to the employment, the industrial liability still exists. Acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration. [Cases.] It can hardly be doubted under this rule that if decedent's incapacity to drive his truck was caused by a heart attack brought on by exertion or sudden shock or excitement incident to his employment on the highway, recovery could be had.

"Where, however, the proximate and immediate cause of the injury is from disability arising solely from an idiopathic or subjective condition, the weight of authority, including the decisions of this state, are against recovery, though the injury clearly occurs in the course of employment. (Citing *Brooker* v. *Industrial Acc. Com.,* 176 Cal. 275 [L.R.A. 1918F, 878, 168 P. 126] and cases from other jurisdictions.)

"It will be noticed in all of these cases the injury or death was the direct result of a fall induced by some subjective condition of the injured party and without any intervening or contributing cause connected with the employment."

In *Madore* v. *New Departure Mfg. Co.* (1926), 104 Conn. 709 [134 A. 259], the Supreme Court of Connecticut set aside an award in favor of plaintiff, remarking upon the impossi-

bility of finding ''a causal relation between the tuberculosis and the employment of the claimant. It did not cause it; he already had it. It did not aggravate or accelerate it in any other way than any other form of similar exertion would have done. The employment was not the proximate cause of the tuberculosis, and in no legal sense did it proximately contribute to it. The coincidence of the employment and the tuberculosis will not support an award, in the absence of the causal connection between the tuberculosis and the employment evidencing that the disease did arise out of the employment.'' This declaration was made by the court, following a statement reading as follows: ''Neither the grinding, nor the work done by him, was the cause of his tuberculosis. The exposure in his employment, tending to light up or aggravate tuberculosis, was no greater, nor different in character, from that to which factory workers generally were subjected. The claimant's present condition is the natural development of the disease; any labor would have brought him to the condition he is now in, and the development of the disease has not been affected by his work any more than it would have been by the same amount of work in any other occupation.'' In the cited case the court refers to a decision reached in another Connecticut case, *Longobardi* v. *Sargent & Co.*, 100 Conn. 383, 392 [124 A. 13, 17], where the court said: '' 'The vice of plaintiff's argument is that he ignores these findings of fact, and emphasizes the other facts found that he suffered from progressive heart disease, and also that during the same period he was at work, as equivalent to establishing a causal relation between the work and the disease, that is, speaking generally, because these facts were concomitant they were necessarily correlative, an ever recurring fallacy which lies at the foundation of much erroneous reasoning. As we have just seen, the finding in the case is that there was no causal relation between his malady and his work.' '' Reference is also made to Madden's case, 222 Mass. 487, 494 [111 N.E. 379, 383, L.R.A. 1916D 1000]. There Chief Justice Rugg, discussing features of the Workmen's Compensation Act of the Commonwealth of Massachusetts, took occasion to say (p. 1004 [L.R.A. 1916D]): ''It does not afford compensation for injuries or misfortunes which merely are contemporaneous or coincident with the employment, or collateral to it. Not every diseased person suffering a misfortune while at work for a subscriber

is entitled to compensation. The relief is so new that the tendency may be to inquire only as to the employment and the injury, and to assume that these two factors constitute ground for compensation. But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment, and flow from it as the inducing proximate cause. The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency, or there can be no recovery. In passing upon this question, an humanitarian emotion ought not to take the place of sound judgment in the weighing of evidence. The direct connection between the personal injury as a result and the employment as its proximate cause must be proved by facts before the right to compensation springs into being. A high degree of discrimination must be exercised to determine whether the real cause of an injury is disease or the hazard of the employment. A disease which, under any rational work, is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. In the former case, no award can be made; in the latter, it ought to be made.''

The conditions imposing liability under the California Workmen's Compensation Act (Lab. Code, div. IV) do not differ materially from those obtaining under similar acts which are operative in Massachusetts and Connecticut from which we have quoted in this opinion. The conditions, so far as they are pertinent to the present discussion, are set forth in section 3600, Labor Code, in the following language (p. 181): ''Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury

proximately causes death, in those cases where the following conditions of compensation concur: (a) . . . (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment. (c) Where the injury is proximately caused by the employment, either with or without negligence . . . (d) . . . (e). . . ."

In the instant case it appears that the work performed by Mr. Thompson consisted of assembling tanks for the Food Machinery Corporation, and the question properly before the commission was whether out of that employment and incidental thereto there arose the acceleration of the disease from which he was suffering. Judging from the testimony of Dr. Miller the aggravation was not attributable either to dust or fumes but to the failure of Mr. Thompson to remain in bed from April, 1943, when he was first employed, until the following July, when he was forced to quit work. During that period Mr. Thompson did not know that he was afflicted with tuberculosis and it was perfectly natural for him, therefore, to continue on the job without adopting any remedial or preventive treatment, but that continuance arose out of his desire to work and not out of his employment nor was it incidental thereto. Since there was no evidence before the commission that dust or fumes caused the further impairment of Mr. Thompson's health and since we can find in the record no other cause which arose out of his employment and in the course thereof, we are constrained to annul the award which was made by the commission. It is so ordered.

Respondent's (Industrial Acc. Com.) petition for a hearing by the Supreme Court was denied January 16, 1947. Gibson, C. J., Shenk, J., and Carter, J., voted for a hearing.