[S. F. No. 18615. In Bank. Nov. 18, 1952.]

FIREMAN'S FUND INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, FRANK C. GREGORY et al., Respondents.

832

Keith, Creede & Sedgwick and Frank J. Creede for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger, Leonard, Hanna & Brophy and Edmund D. Leonard for Respondents.

SPENCE, J.—Petitioner seeks the annulment of an award of the Industrial Accident Commission holding petitioner jointly and severally liable with another insurance carrier for the disabilities suffered by an employee at a time when petitioner had ceased to be the insurance carrier.

Frank C. Gregory, aged 65 years, was employed as Port Manager by the Waterfront Employers' Association. On February 9, 1949, he suffered a cerebral vascular accident (stroke) which resulted in a partial paralysis of his right side. One day less than a year later, on February 8, 1950, he applied to the respondent commission for compensation. The evidence showed that for a period of 65 days, from December 5, 1948, to the date of the stroke, Gregory had worked 11 hours per day in an atmosphere of strain and tension attempting to conclude contract negotiations with certain labor unions. The medical testimony, although disputed, showed that the long hours of work, coupled with the tense and trying conditions which surrounded them, could aggravate an existing hypertension which in turn could, and here did, precipitate a cerebral vascular accident.

From the above evidence the commission found that Gregory's employment during the period from December 5, 1948, to February 9, 1949, "subjected applicant to repeated physical and mental strains and tensions which said strains and tensions became excessive in cumulative effect and precipitated [a] cerebral vascular accident on February 9, 1949." It then held that the injury arose out of and was incurred in the course of the employment. The findings and holding of the commission are supported by substantial evidence and there is therefore no question as to the compensability of Gregory's condition.

During the major part of the 65-day period leading up to the stroke, until January 25, 1949, the petitioner, Fireman's Fund Indemnity Company, was the employer's insurance carrier. On that date the employer changed carriers and substituted the Industrial Indemnity Company. The commission made an award against the two carriers jointly and severally.

Petitioner contends that since it ceased to insure the employer on January 25, 1949, and Gregory did not suffer his stroke until approximately 15 days later, February 9, 1949, it was not the carrier of the risk at the time of the injury and is therefore not liable. It further contends that if there was an injury on or before January 25, 1949, which resulted in the stroke on February 9, 1949, its liability therefor cannot be enforced because no proceeding was commenced for the collection of benefits until February 8, 1950, more than one year after the date petitioner ceased being the carrier of the risk. (Lab. Code, § 5405.) These contentions are untenable.

No contention is made by respondents that the situation here constitutes an "occupational disease" within the meaning of sections 5411 and 5412 of the Labor Code. However, they do contend, as does the Industrial Indemnity Company, that the stroke resulted from but one single and continuous injury which occurred over a 65-day period, and that the statute of limitations runs from the last date of suffering such injury. Section 5405 of the Labor Code fixes the period within which proceedings may be commenced as one year from "the date of injury," which, according to section 5411, except in cases of occupational disease, "is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

The problem of this case is thus twofold. First, it must be determined whether the disability was the result of one continuous injury or whether there was a series of individual injuries. Second, assuming that there was but one continuous injury, it must be determined whether a carrier who ceased being the insurer more than a year prior to the filing of the claim may successfully plead the statute of limitations.

In *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492 [175 P.2d 823], this court stated at page 496: "Where an employee suffers a heart attack brought on by strain and over-exertion incident to his employment the

injury or death is compensable, even though the idiopathic condition previously existed, and no traumatic injury is necessary. [Citing cases.]'' It was then held at page 498: ''. . . [T]he evidence does show that the accumulated effects of the overwork ultimately culminated in the disability that manifested itself on February 8, 1945. The injury, the overwork, was developing the disease all during the period of his employment, and February 7, 1945, was the last day of that process which without further work or activity in the employment became disabling the following day.''

We may accept these statements as authority for the conclusion that in the development of a stroke some point exists where without further strain and tension resulting from the employment, the stroke will result. This point is reached through the cumulative effect of each day's strain and tension. Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force. Consequently, in deciding the responsibility for the stroke, it cannot be said that any one particular exposure to strain and tension was responsible. It can only be said that the total exposures resulted in the disability. Therefore, it must be concluded that the stroke here was the result of one continuous cumulative injury rather than a series of individual injuries.

If the strain and tension to which Gregory was subjected constituted one continuous injury, the statute of limitations did not begin to run until the last exposure to the causative force. The Legislature has laid down the rule that the limitations period is to run from the time of the exposure. (Lab. Code, § 5411.) In the case of a continuous injury this can only mean the time of the last exposure. To require the employee to file his claim within a limited time from the first exposure would be unreasonable. After a single exposure the employee might be totally unable to notice that a deleterious effect has taken place. Only after extended exposure may the effects become noticeable. Consequently, it should only be after the exposures constituting the continuous injury have been concluded that the period of the statute of limitations commences to run. (For a summary of the case law in this general field see annotation, 11 A.L.R.2d 279.)

Gregory filed his claim within the one-year statutory period of limitations (Lab. Code, §§ 5405, 5411) from the cessation of the exposures, and his employer is therefore liable for the full extent of the disabilities. The respondent commission

held the employer's insurance carriers jointly and severally liable, but petitioner argues that since more than one year had expired since it ceased being the carrier of the risk, its liability is barred by the statute of limitations.

It is the settled law of this state that the insurance carrier is directly and primarily liable for the payment of any compensation for which the employer is liable. (Ins. Code, § 11651; *United States F. & G. Co.* v. *Industrial Acc. Com.,* 195 Cal. 577 [234 P. 369].) Thus it has been held that where the employer waived the statute of limitations, the insurance carrier is likewise deemed to have waived it, and its liability continues to be coextensive with the employer's liability. (*United States F. & G. Co.* v. *Industrial Acc. Com., supra,* 195 Cal. 577, 580.) It is apparent therefore that we look to the employer to see whether the statutory period has run.

In the case of a continuing injury the period of limitation commences to run from the time the exposures have ended, and not from the time the employer and his insurance carrier terminate their relationship. The policy and language of sections 11650 and 11651 of the Insurance Code clearly indicate that the rights of the employee cannot be affected by the activities of the employer and his insurance carrier. While here Gregory is fully protected because of his award against the Industrial Indemnity Company, situations may arise where such protection would not exist. We must therefore hold that consistent with the policy and language of the cited code sections, the insurance carrier is liable if the employer is liable.

The commission found petitioner jointly and severally liable with the other insurance carrier. This finding is correct so far as the employee is concerned, since he should not be required to fix the precise portion of the disability attributable to each period of exposure. However, as between the two insurance carriers of the single employer who employed the injured employee during the entire period of exposure, we are of the opinion that a proper apportionment of the award, based on the various factors leading to the disability, should be made in a separate proceeding in a manner similar to that prescribed for apportioning an award as between successive carriers or employers in cases involving occupational diseases. (*Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 86 [172 P.2d 884].)

The award is affirmed so far as the employee is concerned, and the matter is remanded to the respondent commission

with directions to make a proper apportionment of the award between the insurance carriers.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—I am in accord with the conclusions that the stroke was not the result of a series of individual injuries, the statute of limitations did not begin to run until the last exposure, and Gregory filed his claim within the statutory period. However, I do not agree that the stroke was the result of one continuous, cumulative injury nor do I believe that any apportionment of liability can be made as to Fireman's Fund, which was not the insurance carrier on the date of injury.

As I understand the contentions made by Fireman's Fund, it argues that either the employer's, and thus its own, liability is barred by the statute of limitations, or, if the statute is not a bar, the date of injury must be held to be after its period of coverage had terminated. The majority have given consideration only to the first of these alternative propositions. I also believe that they have failed to consider a third possibility for establishing the date of injury when they state that "it must be determined whether the disability was the result of one continuous injury or whether there was a series of individual injuries." In my opinion, the disability was the result solely of the final exposure, without which it would not have occurred.

I agree with the majority that the quoted statements from *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal. 2d 492, 498 [175 P.2d 823], are "authority for the conclusion that in the development of a stroke some point exists where without further strain and tension resulting from the employment, the stroke will result. . . . Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force."

However, I cannot follow the complete reversal of position which occurs in the following sentence. If one day's strain may become a destructive force, then, in my opinion, it can be said that that particular exposure to strain and tension was responsible. Rather than constituting a holding that the date of injury includes all of the time during the exposure, the Lumbermen's case amounts to a declaration that it is the day upon which the accumulated effects of exposure, with-

out further activity, culminate in a condition which thereafter becomes disabling. The rule laid down by that decision meets the test of logic. If the disability is the result of a cumulative condition, then, presumably, had the employee left his employment or otherwise been freed from exposure prior to the date upon which the condition culminated, the disability would not have occurred. Therefore, under the rule of the Lumbermen's case, the date of injury here was February 9, the last date of exposure. Fireman's Fund was not then the insurance carrier, and cannot be liable for the injury. It need not invoke the statute of limitations as a defense.

True, "the insurance carrier is directly and primarily liable for the payment of any compensation for which the employer is liable." But, obviously, an insurance company cannot be made to pay claims upon an employer whom it does not insure. Here, the employer incurred no liability until the date of injury, long after he had terminated his relationship with Fireman's Fund.

The basic error in the majority opinion lies in analogizing the present situation to that existing where an occupational disease is the basis for the claim. In so doing, the majority ignore the distinction required by the statute. Only in the case of an occupational disease does the date of disability determine the date of injury. That could result at a time remote from the date on which the incident or exposure leading to disability occurred. Therefore, in accordance with the objectives of the statute and to protect the employee, this court developed the doctrine of apportioning an award as between successive carriers or employers in cases involving occupational diseases. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884].)

However, in all other cases, the date of injury is the date on which the incident or exposure leading to disability occurred. Of necessity, that date will be during one particular employment and the insurance coverage, if any, will be such as then existed. There is no necessity for apportionment in order to protect the employee.

The rule laid down by the majority will have far-reaching consequences and, inevitably, lead to absurd results. For example, suppose an employee had been overworked for sixty days by his employer and then changed his employment. In his new occupation, he did not overwork but for five more days he devoted late hours to his personal affairs. This, added

to the previous strain of overwork, resulted in his stroke. Obviously, the second employer would not be liable for his injury. But under the new rule here laid down, the first employer would have to pay almost total disability, despite the fact that the stroke was not the result of the employment and the beneficiary was no longer its employee.

This inequitable result is inherent in treating a stroke in the same way as if it were an occupational disease. It cannot be so classified because, under medical theories, it is a disease common to all callings. For this reason, its causes will be different in each individual case. To attempt to trace the combination of strains and circumstances which eventually lead to a stroke is virtually impossible. One man, such as Gregory, may become disabled from overwork; another from the tension of normal duties; and still a third from overexertion on the golf course. Or one individual may have a stroke as the result of a combination of all of these strains plus more. To hold that each employer is responsible for some one of these particular tensions over the entire adult life of the individual is to fix liability on the basis of speculation. It would be impossible to defend claims which may be stale by many years or even decades. Yet this is exactly what employers will find themselves faced with in the future.

For these reasons, I would annul the award insofar as it holds Fireman's Fund liable for the disabilities suffered by Gregory.

SCHAUER, J., Dissenting.—I concur in the conclusion reached by Justice Edmonds and, generally, in the grounds stated therefor.

Unless the stroke is to be regarded as an occupational disease caused by a cumulative injury (and it is conceded that it is not such) I think apportionment of liability either among successive employers or (as is the case here) among successive insurance carriers of a single employer is untenable, and that attempted application of the rule in other cases may prove impracticable and unjust.

I would, therefore, annul the award insofar as it holds Fireman's Fund liable for disabilities suffered by Gregory.

Petitioner's application for a rehearing was denied December 15, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.