[Civ. No. 18841. First Dist., Div. One. Nov. 25, 1959.]

ROBERT H. BEVERIDGE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Watson A. Garoni for Petitioner.

Everett A. Corten, Emily B. Johnson and R. P. Wisecarver for Respondents.

TOBRINER, J.—The petitioner seeks review and annulment of the findings and order of the respondent Industrial Accident Commission that the evidence failed to establish that he suffered an industrial injury on or about October 20, 1958, and that he take nothing by reason of his claim.

The issue which emerges is whether the statute of limitations for a claim for workmen's compensation (1) runs from the date of final stoppage of work if the accumulated strain of work effort causes a preexisting condition to become disabling on such date or (2) runs, in the absence of a new traumatic incident, from the date of the original injury causing the preexisting condition. A subsidiary question involves respondent's defense that since petitioner at the hearing advanced the theory that he sustained a new traumatic injury on October 20, 1958, he cannot now contend that disability results from aggravation of the preexisting condition. We consider these problems hereafter.

The factual background of these issues involves the preexisting back condition and the episode of October 20, 1958.

While the petitioner, a 39-year-old electrician, alleged in his application that on October 20, 1958, he sustained an injury to his back which aggravated a preexisting low back disability, he testified to a prior injury to his back which occurred in 1953. The 1953 injury necessitated three weeks of hospitalization and an additional three weeks of recuperation. Since then, he testified, he has had recurrent episodes of pain in his low back and left leg. Again in February 1956 he suffered further back injury which required two weeks of diathermic treatment. Thereafter he continued to take self-conducted heat treatments at home.

The episode of October 20, 1958, occurred when he lifted a 70-pound coil of electrical conduit and felt a "twinge" of pain in his back. Although applicant testified that he believed he coincidentally told one of his supervisors of this injury, his employer testified that he did not remember receiving this information. Because of unavailability the other supervisor did not testify. Applicant continued to work until December 17, 1958. Thereafter he became totally disabled because of his back condition.

Although applicant requested medical care of respondent, the carrier denied compensation benefits upon the ground that his difficulty resulted solely from the 1953 injury. Resorting to self-procured medical care, applicant obtained the services of Doctor John J. Demas, an orthopedist. Although on Jan-

uary 6, 1959, a laminectomy was performed, applicant's back remained in a severe condition and, according to his doctor, future treatment and observation will be necessary.

Doctor Demas' medical report made up the sole medical statement placed in evidence. The report in part states: "this patient has had, since 1953, a preexisting disability. *His subsequent work to that time has acted as an aggravation of this disability, and the patient's present condition is the effect of such aggravation.* This patient has never been asymptomatic since 1953, by the history given to us." (Emphasis added.) At the hearing, Dr. Demas testified in answer to a question whether the "disease" had progressed to the point where he operated, "I am not certain I know what you mean by the term 'disease' here, because certainly this man's condition has deteriorated in the five years." Asked whether this isn't "called a discogenic disease" the physician answered, "Well, yes, if you want to put it that way. It has deteriorated."

The referee issued his findings and order holding that the applicant did not sustain an injury arising out of and occuring in the course of employment and was not entitled to compensation benefits. The commission denied a petition for reconsideration, and applicant then brought this petition for writ of review.

The contentions of the parties turn on the question as to the date from which the statute of limitations runs. Respondents contend that, since the original injury occurred in 1953, applicant's claim is "barred by the statute of limitations." Petitioner argues that if the injury results from the cumulative effects of the employment the statute runs from the date upon which the employee's condition compels him to stop working. In such case, the claim would not be barred, since applicant stopped working on December 17, 1958. The relevant Labor Code, section 5411, provides: "The date of injury, except in cases of occupational disease, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

While it is true that the power of an appellate court is confined to a determination as to whether substantial evidence supports the commission's determinations of fact (*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.* (1957), 47 Cal.2d 903, 905 [306 P.2d 425]), we find here, as we shall point out, that the commission applied an unsupportable theory to the ascertained facts and that the facts contradict its conclusions.

We think the proposition irrefutable that while a

succession of slight injuries in the course of employment may not in themselves be disabling, their cumulative effect in work effort may become a destructive force. The fact that a single but slight work strain may not be disabling does not destroy its causative effect, if in combination with other such strains, it produces a subsequent disability. The single strand, entwined with others, makes up the rope of causation.

The fragmentation of injury, the splintering of symptoms into small pieces, the atomization of pain into minor twinges, the piecemeal contribution of work-effort to final collapse, does not negate injury. The injury is still there, even if manifested in disintegrated rather than in total, single impact. In reality the only moment when such injury can be visualized as taking compensative form is the date of last exposure, when the cumulative effect causes disability.

This principle finds expression in 2 Hanna, The Law of Employee Injuries and Workmen's Compensation: "Injury may result from the accumulated effects of overwork or from long-continued exposure to tension and strain. Where there is such an extended exposure, the result is regarded as one continuous, cumulative injury rather than as a series of individual injuries. Separately, each day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force. With such an injury, the statute of limitations runs from the date of the last exposure." (Pp. 133-134.)

The Supreme Court has applied the principle to a case in which an employee, exposed to 65 days of tension in labor negotiations, sustained an aggravation of "an existing hypertension which in turn . . . precipitate[d] a cerebral vascular accident." (*Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 831, 832 [250 P.2d 148].) The court points out that in the development of this condition, a point exists, "where without further strain and tension resulting from the employment, the stroke will result." The court states, "This point is reached through the cumulative effect of each day's strain and tension. Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force. . . . Therefore, it must be concluded that the stroke here was the result of one continuous cumulative injury rather than a series of individual injuries." (P. 834.) The analogy to successive work-incurred back injuries is strong, despite the difference in physical disabilities.

The court expresses its underlying reason for fixing the date

from which the statute runs as that after the exposures "have been concluded": "To require the employee to file his claim within a limited time from the first exposure would be unreasonable. After a single exposure the employee might be totally unable to notice that a deleterious effect has taken place. Only after extended exposure may the effects become noticeable. Consequently, it should only be after the exposures constituting the continuous injury have been concluded that the period of the statute of limitations commences to run." (P. 834.) We believe this reasoning entirely applicable to the instant case.

The same approach becomes manifest in *Limited M. C. Ins. Co.* v. *Industrial Acc. Com.* (1940), 37 Cal.App.2d 50 [98 P.2d 837]. In that case a linoleum mechanic suffered from a preexisting nondisabling knee difficulty but the commission found the disabling injury occurred on a subsequent date. The existence of the preexisting general condition did not obviate the accumulative impact of that condition into a disabling injury upon a specific date. The court says, "The mere existence of the preexisting non-disabling condition, which was admitted, does not necessarily preclude the commission from finding that the disabling injury occurred on a specific date, and awarding compensation based on that injury. Industry takes the employee as he is at the time of his employment. For subsequent injuries lighting up or aggravating that condition, rendering it disabling, he is entitled to compensation. [Citations.]" (P. 55.)

The commission itself has taken this position. In *Fidelity & Casualty Co. of New York* v. *I.A.C.* (1944), 9 C.C.C. 294, the commission held that an employee sustained injury to her back in January, 1943, although she began suffering such back discomfort in 1942 and quit working in 1943 because of that condition. She worked thereafter, but the doctor reporting on her behalf stated " 'numerous sprains of the back were suffered . . . Each sprain was at first minor . . . until the frequently repeated lifting with a back gradually rendered more and more vulnerable became so much of an injury and caused so much pain she had to quit.' " (Pp. 294-295.) In this case, "It was the position of the Commission that the strains of the employment, operating upon a vulnerable back, produced a disabling condition which constituted an injury, and that the statute of limitations began to run *from the time her condition compelled her to quit work,* which was well within six months of the date when the application was filed."

(P. 295; emphasis added.) To the same effect: *Liberty Mutual Ins. Co.* v. *I.A.C.* (1956), 21 C.C.C. 117; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.* (1946), 29 Cal.2d 494 [175 P.2d 823].

Yet the referee here proceeded upon the premise that, with the exception of the occupational disease cases, in order to produce ''an aggravation that could cause a latent or pre-existing condition, not disabling to become disabling there must have been a *new incident*. . . .'' (Report of Referee on Reconsideration, p. 3; emphasis added.) The cumulative effect of work effort aggravating the prior condition, however, which reaches its climax in disability, is the equivalent for the ''new incident,'' the ''accident,'' the ''new injury'' which the referee claims did not occur here. The synthesis of symptoms and effort is as much causative of disability as a new trauma; a distinction between them would be verbal, not real.

The referee, likewise, failed to evaluate the relationship of applicant's work effort to his back condition. The referee implies that the original injury worsened merely through the process of time and life itself. He analogized it to a common cold which culminates in pneumonia: a progression that might have no connection with employment. Yet, this applicant performed heavy manual work, and his doctor states that the nature of his work led to the final rupture of the back. The commission could not properly ignore this uncontradicted evidence (*William Simpson Const. Co.* v. *Industrial Acc. Com.* (1925), 74 Cal.App. 239, 243 [240 P. 58]; *Nielsen* v. *Industrial Acc. Com.* (1932) 125 Cal.App. 210 [13 P.2d 517]) and substitute for it *a priori* observations. In any event the referee states that, ''Maybe *his work* played some part in it [the aggravation of applicant's condition]'' and ''that the mere exigencies of living played as much part *as his work activity may have.*'' (Report of Referee on Reconsideration, pp. 3, 6; emphasis added.) If the work effort did contribute to the rupture, that causation cannot be ignored, and the award pinioned entirely upon nonindustrial factors.

Even upon the referee's theory that applicant suffered from a ''discogenic disease,'' the referee could not entirely discount the physician's testimony that the work effort aggravated this condition into disabling symptoms. The cases hold that ''A disease which, under any *rational work,* is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being

pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. *The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause.* In the former case, no award can be made; in the latter, it ought to be made.'' (*California etc. Exchange* v. *Industrial Acc. Com.* (1946), 76 Cal.App.2d 836, 842 [174 P.2d 680]; emphasis added.) The referee, we believe, failed to consider the relationship of the ''rational'' work of the applicant, in the light of the doctor's report, and the effect of such work effort in precipitating the final collapse of the preexisting back condition.

We conclude that since the accumulated strain of work effort caused applicant's preexisting back condition to become disabling on December 17, 1958, the claim is not barred by the statute of limitations.

We turn to the subsidiary point that petitioner has foreclosed himself from benefits based upon the above theory because his application reads that he sustained injury on or about October 20, 1958, and because he allegedly contended at the hearing that this was the date of his injury. In the first place, applicant answers that he inserted that date as the ''date of injury'' because it was then that the final culmination of the preexisting condition caused total inability to work. In the second place and more basically, we do not believe that awkwardness in allegation should constrict a worker's right to compensation. In many cases before the Industrial Accident Commission, applicants are not represented by counsel and lack advice as to procedural niceties. The applicant's claim is entitled to adjudication upon substance rather than upon formality of statement.

The findings and order denying petition for reconsideration of the Industrial Accident Commission are annulled, vacated and set aside. The case is remanded to that commission for proceedings in accordance with this decision.

Bray, P. J., and Foley, J. pro tem.,* concurred.

The petitions of respondents Industrial Accident Commission and Columbia Casualty Co. for a hearing by the Supreme Court were denied January 20, 1960. Spence, J., and McComb, J., were of the opinion that the petitions should be granted.

---

*Assigned by Chairman of Judicial Council.