[Civ. No. 22109. First Dist., Div. One. Dec. 9, 1964.]

ARGONAUT INSURANCE COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and EARLY C. HARRIES, Respondents.

112

Hanna & Brophy and Walter Jakobsen for Petitioners.

Everett A. Corten, Robert A. Borgen, Watson A. Garoni and Sheldon C. St. Clair for Respondents.

BRAY, J.*—Petitioners, Argonaut Insurance Company and its assured Arntz Brothers, seek annulment of a permanent disability award to Early C. Harries, an employee of Arntz Brothers.

QUESTIONS PRESENTED.

1. Does the evidence support the finding that the continuing traumatic insults during a prolonged period eventuated in applicant's disability?

2. Should liability have been apportioned over a 10-year period instead of from July 1, 1955, to August 7, 1963?

RECORD.

Respondent Harries was employed as a laborer by Arntz Brothers for approximately 10 years. His employment was terminated on August 7, 1963, by reason of a back disability incurred during employment. Argonaut Insurance Company was the employer's workmen's compensation insurer for the period July 1, 1955, through April 1, 1962. Thereafter, Employers' Liability Assurance Corporation, Ltd., was the employer's workmen's compensation carrier.

On March 19, 1964, findings and award issued holding that respondent Harries had sustained a compensable injury while employed between July 1, 1955, and August 7, 1963, and that liability should be prorated 80 per cent to Argonaut Insurance Company and 20 per cent to the Employers' Liability

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Assurance Corporation, Ltd. Petitioner, Argonaut Insurance Company, filed a petition for reconsideration, and the decision after reconsideration affirmed the 80 per cent liability of the petitioner. In the opinion and order after reconsideration, the panel stated that it was of the opinion that respondent had suffered a continuous injury, and in the findings of fact recited that the employment period was July 1, 1955, to August 7, 1963.[1]

Petitioner Argonaut now seeks a writ of review contending that: (1) the commission exceeded its jurisdiction in awarding compensation for an alleged traumatic injury against a compensation carrier who covered an employer during a period when the employee had no symptoms whatsoever; and (2) if the employee's work activities did constitute a cumulative injury, the commission erred in assessing liability during a portion of the period of employment rather than to the entire period of employment.

Petitioners contend that the evidence fails to show any connection between the long period of employment and the onset of disability.

Employers' has not petitioned for review of the apportionment against it.

During the period of his employment applicant worked as a "laborer," "construction laborer" or "construction worker." Over that period he engaged from time to time in heavy labors including heavy lifting and other efforts consistent with his employment as a construction laborer.[2] On or about July 23, 1963, Harries noticed pain in the calf of

---

[1]Petitioners contend that the record does not support the finding to this effect in that applicant's employment was over a longer period. While applicant did not specify the date of the beginning of his employment he testified that he had worked for Arntz Brothers approximately ten years. He was several times questioned concerning his work during "this 10-year period." Argonaut's petition for reconsideration states, "Applicant's employment began about July, 1953." Applicant's answer to petition for reconsideration states, "He had worked for this employer *solely* for the period July 1, 1955 until August 7, 1963, a period of eight years and one month, . . ." The record sufficiently bears out the commission's finding as to length of service.

[2]Petitioners contend that the finding in this respect is not supported. The record shows that at the time applicant first felt pain he was carrying heavy planks up three flights of winding stairs. Applicant was asked "[D]uring this ten year period, was the work that you did generally the same? I realize that it would have been lighter at times and heavier at times, but over-all was it the same type of laboring work?" He replied that it was and that "there are so many different things that you do in construction work." He stated he was working as a construction laborer all this time. The finding is supported.

his left leg and hip (his left thigh). This pain forced him to quit on August 7, 1963. He then visited his doctor and had X-rays taken. The onset of pain was not sudden and there was no specific incident of pain associated with his employment. On August 8 he was hospitalized. He was in traction for 12 days and then returned home. On September 16 and 17 he attempted to work, but because of pain around his left ankle he returned to his doctor. In October he had a myelogram. He was then operated on and certain intervertebral discs were removed. He returned to work December 10, 1963, and has continued to work since.

Prior to the disablement of August 7, 1963 applicant had no history of back trouble. The referee found that applicant's disability resulted from his employment as a laborer for Arntz Brothers and that it resulted from a continuous insult to his back caused by the demands on a construction worker. Liability was then apportioned between the carriers as hereinbefore set forth for the respective periods for which they insured the employer.

Argonaut's petition for reconsideration from the findings and award specifically urged that it was charged with liability for a period of employment wherein it was not the compensation carrier, that is, the time prior to July 1955. Also that there were no specific incidents of injury which would make the injury identifiable as to the facts and the time involved.

1. *Cause of Applicant's Disability.*

All the medical evidence agrees that applicant suffered a disc pathology, and that the disc pathology was the result of progressive degeneration of the discs due to an aging process. The question is whether or not the applicant's labors as a construction laborer aggravated this disc pathology. The medical evidence consists of reports of five physicians and the records of St. Joseph's Hospital.    While there is a conflict in the evidence as to whether applicant's work contributed to the disc pathology, there is substantial evidence to the effect that it did. Therefore, under the well-known rule applicable to review of Industrial Accident Commission determinations, we are bound by the commission's findings. (*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.* (1957) 47 Cal.2d 903, 905 [306 P.2d 425].)    Dr. Specker, a witness called by Employers' Liability, admitted "that the occupational activity of a construction laborer

possesses a somewhat greater potential for aggravating a degenerating back than does non-occupational activities.'' He further conceded that ''the cumulative effects of the man's daily occupation and work could aggravate a condition such as this man's back,'' although he said, ''I can't dispute the feasibility of it having occurred but I do not see the clinical evidence that it did.'' He finally admitted that he did not ''[A]damantly specifically rule out occupation as some degree of causation'' of applicant's back disability. He was asked, ''Would it be a fair statement, then, Doctor, of your opinion that each day that he worked as a construction laborer contributed more or less equally to the pathology?'' He replied, ''I think that would be approximately true.'' Dr. Taylor reported, ''I do not believe I can definitely stated [sic] that the cumulative effects of his work was the cause of his back disability. However, there is reasonable medical probability that his work was at least part of the cause creating his back disability.''

While Dr. Palmer, petitioners' witness, opined that applicant's disc condition was not related to his employment, the above opinions of Drs. Taylor and Specker constituted substantial support of the commission's finding that applicant's employment as a construction laborer from July 1, 1955, to August 7, 1963, aggravated the underlying disc pathology which required operative procedure for correction. Applicant's work history permits a reasonable inference of continuous strain aggravating applicant's back eventuating in the disability found herein.

There need not be one single identifiable traumatic experience before a finding of industrial injury can be made. Cumulative injury is recognized in *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (1952) 39 Cal.2d 831 [250 P.2d 148], where the employee suffered a cerebral vascular accident which the court found to have been precipitated by the aggravation of an existing hypertension by exposure to 65 days of tension in labor negotiations. The court said, ''This point [the stroke] is reached through the cumulative effect of each day's strain and tension. Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force. . . . Therefore, it must be concluded that the stroke here was the result of one continuous cumulative injury rather than a series of individual injuries.'' (P. 834.) The analogy to the work-incurred back injuries in the case at bench is apparent, despite the

difference in physical disabilities, and in the length of time before the particular disability occurred. *Fireman's Fund* held that where the disability was the result of one continuous injury the carrier which ceased being the insurer of the employer prior to the disability was jointly and severally liable with the carrier at the time of the disability.

In *Beveridge* v. *Industrial Acc. Com.* (1959) 175 Cal. App.2d 592 [346 P.2d 545], this court found that the employee's back injury was due to the cumulative effect of work effort aggravating a prior condition. There was a back injury some five years prior to the disabling injury and between the two injuries the workman had recurrent episodes of pain in his low back and left leg.

Although Dr. Specker opined that applicant's lumbar intervertebral disc syndrome was not contributed to or aggravated by his daily work, he agreed that the "microtraumata" (small trauma) of occupational activity of Harries as a construction worker could make daily contribution to the acceleration of the pathological process. Dr. Taylor stated "there is reasonable medical probability that his work was at least part of the cause creating his back disability." Applicant's work history permits a reasonable inference of continuous strain aggravating applicant's back, which eventuated in disability.

From a combination of Dr. Specker's testimony that applicant's daily work *could* provide a continuous cumulative injury to applicant's disc pathology and Dr. Taylor's testimony in effect, that it did, and from the rulings in *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.*, supra, 39 Cal.2d 831, 835 and *Beveridge* v. *Industrial Acc. Com.*, supra, 175 Cal.App.2d 592, to the effect that where the disability is the result of one continuous cumulative injury the award for such disability must be apportioned among the insurance carriers covering the workman's employer or employers over that period, the commission was justified in determining that applicant's microtraumata covered the period of his employment, and that his disability award should be prorated between the two carriers covering his employer during that period.

As said in *Beveridge, supra,* at pages 594-595: "We think the proposition irrefutable that while a succession of slight injuries in the course of employment may not in themselves be disabling, their cumulative effect in work effort may become a destructive force. The fact that a single but

slight work strain may not be disabling does not destroy its causative effect, if in combination with other such strains, it produces a subsequent disability. The single strand, entwined with others, makes up the rope of causation.''

■ ''Injury may result from the accumulated effects of overwork or from long-continued exposure to tension and strain.[1] Where there is such an extended exposure, the result is regarded as one continuous, cumulative injury[2] rather than a series of individual injuries.[3] Separately, each day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force.[4] ■ With such an injury, the statute of limitations runs from the date of the last exposure.[5] ■ If the employer has more than one insurance carrier during the period of the continuous injury, apportionment of liability between the respective carriers is proper.[6]'' (2 Hanna, The Law of Employee Injuries and Workmen's Compensation, pp. 133-134.)

''A third type of situation calling for apportionment between employers or insurance carriers has been judicially established. Under this rule, disability of cumulative origin, even though due to pathology other than occupational disease, is not necessarily the sole responsibility of the employment or insurance coverage during which the disability began, but may be charged against all periods of employment (and corresponding coverage) deemed to have contributed to its production.[9] Implicit in this rule is the necessity for apportionment of liability between the responsible employments or insurance carriers.[10] Such an apportionment can apply, of course, to all types of compensation benefits covered by such a liability.'' (2 Hanna, *supra*, p. 271.)

More and more, the commission and the courts are coming to regard continuous cumulative injury as a precipitating

---

''1. *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (*Gregory*), 17 Cal. Comp. Cases 289, 39 Cal.2d 831 [250 P.2d 148].

''2. Note should be taken of the similarity of 'continuous injury' to 'occupational disease,' and of the fact that the two are difficult to distinguish in any respect other than in the type of pathology involved.

''3. *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (*Gregory*), 17 Cal. Comp. Cases 289, at 291, 39 Cal.2d 831 [250 P.2d 148].

''. . . . . . . . . .

''6. *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (*Gregory*), 17 Cal. Comp. Cases 289, at 292, 39 Cal.2d 831 [250 P.2d 148].''

''9. *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (*Gregory*), 17 Cal. Comp. Cases 289, 39 Cal.2d 831 [250 P.2d 148].

''10. . . . . . . . . . . . .''

event even though with no specific incident of work, which ultimately results in disability, in somewhat the same light as successive exposures to occupational disease which has required apportionment. As said in Hanna, *supra*, page 134, there is a great similarity between occupational disease cases and other continuous or cumulative type injury cases.

In either case the workman's ultimate disability is due to continuous exposure at work to the particular situation which finally causes his physical breakdown. Moreover, in each case there is no compensable injury until the disability occurs.

In *Socony Mobil Oil Co., Inc.* v. *Industrial Acc. Com. (Cerles)* 27 Cal. Comp. Cases 90 (writ denied by District Court of Appeal), the situation was similar to that in our case. There Cerles worked for the petitioner from October 1946 to March 1958 without noticing any pain or trauma until the latter date. His duties were to wash trucks, receive oil shipments which came in barges, pump gas into trucks and occasionally receive supplies weighing up to as much as 50 pounds and store them in enclosures. In March 1958, he began to notice constant pains of the low back radiating down the right leg (similar to the symptoms of applicant in the case at bench), without any strain, trauma or known precipitating cause. He was found to have an unstable low back due to congenital anomalies, which was aggravated by the continuous physical strain of his work, resulting in a herniated disc. Based upon the rule of *Beveridge, supra,* the commission found that the applicant sustained his back injury over the entire period of his employment, that even though the employee had not experienced a specific identifiable injury to his back, his disability was the result of a continuing traumatic experience due to repeated physical strain in his work.

*Mary M. Layden* v. *Industrial Indemnity Co.* (1959) 25 Cal. Comp. Cases 40 dealt with a situation in which the applicant contracted tuberculosis through four years' exposure to a tuberculous fellow employee. The main question presented was when the statute of limitations started to run. Was it from the date of the last exposure, which was more than one year before disability occurred or was it from the date of disability? The insurance carriers contended that the rule of occupational hazard could not apply to this situation as the disease in question was not peculiar to the applicant's occupation. The commission adopted the referee's opinion which reviewed at some length the development of the law

of occupational diseases in California and pointed out that, "There is no basis for a contention that the Legislature intended that only diseases 'natural to, inhering in, and incident and concomitant of the work in question' were to be deemed occupational diseases. . . ." (P. 45.) It then stated : " 'Campbell on Workmen's Compensation contains the following language : "An occupational disease does not produce disability suddenly. On the contrary, this occurs gradually and its onset cannot be fixed at any particular time by any single event.

" ' "The physical condition resulting and not its nomenclature is the decisive factor in determining whether a socalled disease is the result of a compensable injury. A personal injury may be the direct and consequential result of the employment, although a condition may arise termed, in some connection, a disease." (Volume 1, page 329, 1935.)
" ' . . . . . . . . . .

" 'Sections 5411 and 5412 of the Labor Code should be taken to mean that wherever a working man suffers a compensable injury of an insidious character so that as of the date of injury or exposure he has no actual disability and neither knows or in the exercise of reasonable diligence should know that he has suffered such an injury, the statute of limitations will run from that date on which there is a concurrence of both disability and actual or constructive knowledge of job connection. The corollary of the foregoing rule is that where there is an overt injury with consequences that are immediately realized or realizable, the statute of limitations will then run from the date on which occurred the alleged incident or exposure. The foregoing interpretation of section 5411 and section 5412 is wholly consonant with the liberal construction of the compensation law enjoined by the Legislature, with the precedents of the California courts over the past 30 years, and with the requirements of justice.' " (P. 46.)

While continuous microtraumatic injuries to a pathological disc are not exactly the same as exposure to disease as in the occupational disease cases, the situation is somewhat similar. Such injuries to a construction worker are not necessarily of the type that even the accumulation would cause a workman with a healthy back to suffer disability, and therefore, they are distinguishable from the occupational disease situations; nevertheless, they are somewhat analogous because with this particular applicant and his back condition the work

of his occupation caused the accumulating injuries which eventually caused his disability.

In *Beveridge, supra,* the court, in pointing out that the referee had failed to evaluate the relationship of the applicant's work effort to his back condition, stated that it was the cumulative effect of the applicant's work effort aggravating his prior condition which reached its climax in disability.

The fact that in *Beveridge, supra,* applicant had sustained a prior known back injury and Harries in our case had no knowledge of any prior injury, does not make the rule of *Beveridge* inapplicable here. It is the fact that in both cases the constant trauma of the work upon an existing pathological condition brought about the disability that is important. The length of time it took to do that would not affect the rule.

In *Fireman's Fund, supra,* the trauma covered only over a 65-day period, while in our case it covered a period of over eight years. Again, it is not the length of time the trauma takes to bring about the disability, but the fact that it did do so.

■ "An employee's disability may be a composite result of more than one industrial accident or trauma, particularly where permanent disability is involved. Even temporary disability and the need of medical treatment may be jointly produced by successive traumatic injuries, and the Commission may divide liability for all compensation benefits in such cases between the employers or carriers involved. The best illustration of such a situation is that of a back disability resulting from the effects of accidents in succeeding employments." (2 Hanna, *supra,* p. 270.)

The practice of the commission in apportioning liability for disability caused by a series of industrial injuries has been upheld. (See *Argonaut Ins. Co. v. Industrial Acc. Com.* (1961) 189 Cal.App.2d 23 [10 Cal.Rptr. 745].) Logically, there can be no real difference between a disability caused by specific injuries culminating in that disability and a disability caused by continuous culminating injuries.

An employer takes an employee as he finds him at the time of employment. Where the employee at that time has a pathological condition and his work combined with that condition eventually causes disability there should be no difference in the matter of apportioning disability benefit payments whether the eventual disability was caused by several industrial in-

juries or by what has been characterized as "cumulative injury," and "continuous injury." Such injuries are a succession of slight injuries, not in themselves disabling whose cumulative effect becomes a destructive force or a gradual deterioration that is not the result of sudden injury but is caused by repeated physical strains necessarily arising from the nature of the employee's work. ▆▆▆ As said in *Beveridge, supra,* page 598, quoting from *California etc. Exchange* v. *Industrial Acc. Com.* (1946) 76 Cal.App.2d 836, 842 [174 P.2d 680], ". . . 'It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. *The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause.* In the former case, no award can be made; in the latter it ought to be made.' "

Cases in other jurisdictions upholding this principle are: *American Maize Products Co.* v. *Nichiporchik* (1940) 108 Ind.App. 502 [29 N.E.2d 801], contraction of the employee's hand due to several years jarring through use of an air hammer. "While it is true that the appellee can point to no particular date nor to a particular blow which produced the resultant injury, yet it is not necessary that the accident occur at any particular or specific time. The series of blows to the appellee's hands produced the injury and loss which was an unintended and unexpected occurrence." (29 N.E.2d at p. 805.) *Standard Cabinet Co.* v. *Landgrave* (1921) 76 Ind.App. 593 [132 N.E. 661], carpenter's bursitis resulted from a period of working in a kneeling position, the employee having no warning of the approach of disability and no knowledge of his bursitis until so informed by his doctor. *York* v. *E. I. Du Pont de Nemours & Co.* (La.App. 1948) 37 So.2d 68, rupture of an intervertebral disc due to repeated lifting over a long period of time. *Purity Biscuit Co.* v. *Industrial Com.* (1949) 115 Utah 1 [201 P.2d 961], disc pathology resulting from repeated strains. *Stokes* v. *Miller* (La.App. 1951) 50 So.2d 509, "While it is true that the medical testimony reveals that plaintiff had a congenital weakness in his back, this, of course, cannot defeat recovery as the evidence clearly shows that plaintiff's disability was the result of the strenuous efforts in performing the duties of his employment which caused or contributed to a physical breakdown or injury to his back, more than likely because of the pre-existing congenital defect." (50 So.2d at p. 511.)

*Barker* v. *Shell Petroleum Corp.* (1931) 132 Kan. 776 [297 P. 418], injury to back by riding jolting equipment over a five-day period aggravating an arthritic condition.

2. *Period of Apportionment.*

■■■ Petitioners contend that the liability for the injury should have been apportioned throughout the applicant's work history, that Harries was employed by Arntz Brothers prior to July 1, 1955, and that the liability should have been apportioned with the insurance carrier of that period. While Harries testified that he was employed by Arntz Brothers for a period of ten years the commission found the employment to have been from July 1, 1955 to August 7, 1963, a period of eight years and one month. No issue was made before the commission of the period of employment until the filing of the petition for reconsideration. No suggestion was made even in that petition that the carrier for the prior period be made a party. It is too late now to raise an issue not properly raised before the commission.

■■■ As Sullivan, J., said in *Casualty Ins. Co.* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 748, 757 [38 Cal. Rptr. 364], "It is a general principle of law that a finding as to facts not put in issue by the pleadings and submitted by the parties for decision is meaningless and should be disregarded as surplusage. (*Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 36-37 [278 P.2d 454]; *Hall* v. *Hickey* (1957) 156 Cal.App.2d 94, 101 [319 P.2d 33]; *Yost* v. *Hillcrest Motor Co.* (1963) 215 Cal.App.2d 108; 111 [29 Cal.Rptr. 906].)"

*Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79 [172 P.2d 884] holds, in effect, that in the case of a continuing injury, the employee is not required to bring into the proceeding all of the carriers as to whom apportionment can be made. Apportionment *"is a matter to be settled between the insurance carriers, . . ."* (P. 84.) *Fireman's Fund, supra,* states that the employee is not "required to fix the precise portion of the disability attributable to each period of exposure." (P. 835.)

The award is affirmed.

Sullivan, P. J., and Molinari, J., concurred.