[Civ. No. 7545.   Third Dist.   Nov. 10, 1948.]

GUARANTEE INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ADAM C. TURBAN, Respondents.

W. N. Mullen for Petitioner.

T. Groezinger and John A. Rowe, Jr., for Respondents.

THOMPSON, J.—By means of certiorari petitioner seeks to annul an award of $30 per week for a period of one month, rendered by the Industrial Accident Commission as temporary total disability of a blacksmith, in the nature of alleged injury to his eyes incurred in the course of employment by being subjected to arc welding flashes. Upon petition for rehearing, no additional evidence having been adduced, the award was affirmed.

The petitioner contends that there was no evidence to support the findings and award, and that the uncontradicted evidence of two physicians to the effect that claimant's eyes were not injured by arc welding flashes, and that his defect of vision was due to advanced age, is controlling since there is no evidence to the contrary by any medical expert witness.

The evidence shows that Adam C. Turban was employed in October, 1946, by Oscar Squire, as a blacksmith at Gridley. He was then 59 years of age. He worked for Squire about eight months. He previously worked as a blacksmith at Yuba City for an employer by the name of Caldwell. He had previously suffered from trouble with his eyes, occasionally wore glasses for a period of about four years, and was treated in the McCloud Hospital on that account. The former eye trouble was evidently not caused by arc welding flashes. He was asked, "Did you have any arc flashes there [at Caldwell's]?" to which he replied, "No, I didn't." While Mr. Turban was working in the shop for Oscar Squire he was stationed near a workman who was engaged in welding. The claimant testified that no adequate shields were provided to

protect his eyes from arc welding flashes and that his eye-sight was thereby impaired. He left his employment May 4, 1947, on that account. He reported his ailment to the employer who sent him to a physician for examination. The examination was made by two physicians who reported that his defect of sight was not due to arc welding flashes, but was due to his age and natural diminution of vision. In two or three weeks he returned to his employment but worked only about one week and then left. After treatment his sight improved and he subsequently worked for other employers, but admitted that he needed proper glasses.

The claimant testified he had used glasses for reading "just about three or four years, something like that." On Monday following May 24th, he reported trouble with his eyes to his employer. He remained away from his work for a short time, saying, "I wasn't able to work, . . . on account of my eyes." The employer sent him to Dr. Montano at Marysville, who examined him and reported on May 26th, "Surgeon's First Report: A. L. negative. Cornea few old nebulae." We assume that report merely means that the vision was some-what clouded. It contains no finding that the vision was impaired as a result of arc welding flashes or burning. The claimant was then sent to Dr. Thompson for further examina-tion. On June 5th, Dr. Thompson, after examination, reported, "Surgeon's First Report: Slight congestion or conjunctiva on right marked photophobia on right pupil reacts to light; increased intraocular tension." The term "photophobia" merely means "Intolerance of the eye to light, with spasm of the eyelids." (Chambers's Technical Dict., p. 639.) That report contained no finding that the defect of eyesight was due to arc welding flashes or burns. The case was then referred back to Dr. Montano. The claimant was sent to the Yuba City General Hospital. He then had a marked swelling of the eyes. A drug was applied to the eyes which promptly cleared up, and he was discharged from the hospital. Dr. Montano reported to Dr. Thompson, "Diagnosis: Ocular allergy, severe. I have advised him to return to you for skin tests." On June 4, 1947, Dr. Montano wrote to Dr. Thompson saying, "Eye examination was as follows: . . . Visual acuity C. D. 20/20-2; O. S. 20/20. There was no staining of the cornea. The fundii were examined after the pupils were dilated and were found to be completely negative. *There was no evidence of retinal burn.* Slit lamp examination of both eyes revealed a few fine old corneal opacities *which have noth-*

*ing to do with this present complaint. . . . I could not find any evidence of so-called 'welder's' conjunctivitis or any retinal damage to exposure to welding arc."* (Italics added.) In a letter to the insurance company, dated November 26, 1947, Dr. Montano states that claimant's defect of sight is due to his advanced age and recommends the use of glasses. He diagnoses the impairment of vision as "presbyopia and hyperopia." Presbyopia is defined as "Long-sightedness and impairment of vision due to loss of accommodation of the eye in advancing years." (Chambers's Technical Dict., p. 671.) The term "hyperopia" is defined as "Long-sightedness. An abnormal condition of the eyes in which parallel rays of light come to a focus behind the retina instead of on it, the eyes being at rest." (Chambers's Technical Dict., p. 432.)

No other expert medical evidence was adduced at the hearing. The claimant called no medical expert witness. The commission, however, found that the claimant sustained "temporary total disability" received "in the course of his employment consisting of injury to his eyes from arc welding flashes."

We are impelled to hold there is no competent evidence to support that finding, and that the award should therefore be annulled. Under the circumstances of this case it would appear to be a question for the determination of medical experts only as to what caused claimant's defect of eyesight. His statement that his impairment of sight was caused by the arc welding flashes was a mere conclusion of a nonexpert which may not be considered to rebut the only medical expert evidence in the case. The swelling about the eyes after injecting medicine for the purpose of examination was accounted for by Dr. Montano by saying that the patient was peculiarly allergic to that treatment. The claimant admitted that the glasses which he had occasionally used for some four years did not help his sight and that he needed proper glasses.

We are satisfied this case falls within the established rule that when the diagnosis of a physical condition depends essentially upon the knowledge, skill and experience of medical expert witnesses, and is not within the common knowledge of nonexpert laymen, the evidence of such medical experts is conclusive upon that issue. (*Hines* v. *Industrial Acc. Com.,* 215 Cal. 177, 187 [8 P.2d 1021] ; *Newton* v. *Industrial Acc. Com.,* 204 Cal. 185, 190 [267 P. 542, 60 A.L.R. 1279] ; *General Acc., Fire & Life Assur. Corp.* v. *Industrial Acc. Com.,* 106 Cal.App. 39, 42 [288 P. 692] ; *William Simpson Const. Co.* v. *Industrial Acc. Com.,* 74 Cal.App. 239, 243 [240 P. 58] ; *John-*

*son* v. *Clarke,* 98 Cal.App. 358, 364 [276 P. 1052]; *Engelking* v. *Carlson,* 13 Cal.2d 216, 221 [88 P.2d 695].) That rule is stated in 1 Campbell's Workmen's Compensation, section 1082, at page 939, supported by numerous California cases, as follows:

"Properly analyzed, these cases merely represent specific applications of a broader rule that uncontradicted medical opinion cannot be ignored and must be followed. Competent evidence must be rebutted and overcome by competent evidence or the former controls the record. . . .

"When the question is one within the knowledge of experts only, their testimony is conclusive."

A diagnosis of the causes of injuries to, or diseases of, the eyes, heart or other internal organs frequently depends upon the skill and judgment of expert physicians. Of course an injured person may testify to the pain he suffered or the physical conditions which followed an injury whether it is traumatic or otherwise, but usually a layman may not express his opinion that subsequent ailments resulted therefrom. (1 Campbell's Workmen's Compensation, § 1083, p. 941.) There is no evidence in this case of expert medical testimony to support the finding of the commission that claimant's defect of sight was the result of arc welding flashes. His evidence of advanced age and former defect of sight and the use of glasses seems to confirm to some extent the physicians' opinions to the effect that his eyes were not injured as the result of arc welding flashes.

The case of *Employers' Liability Assurance Corp.* v. *Industrial Acc. Com.,* 42 Cal.App.2d 669 [109 P.2d 716], upon which respondents rely, is not in conflict with what we have previously said regarding the controlling effect of the only medical expert testimony which was adduced. In that case the claimant, while employed by the Otis Elevator Company, was struck upon his back and head, which resulted in an injury for which he was compensated by the commission. On certiorari the award was affirmed. Unlike the present case, the reports of the physicians affirmatively showed the claimant received an injury to his back from which there was a "tenderness" and he continued to suffer pain four months after the injury occurred, which prevented him from doing "any work since the time of the accident." The appellate court said:

"The question of the duration of the disability is one of fact to be determined by the commission and if there is

substantial evidence to support the finding and order of the commission this court may not substitute its views for those of the commission and annul the award. (Citing authority.) It appears from the reports of the physicians that the employee *did in fact receive an injury to his back.* The testimony of the employee presented substantial evidence to support the finding of the commission that the disability had not ceased on January 8, 1940." (Italics added.)

No such competent evidence of the actual injury to the eyes from arc welding flashes appears in the evidence of the physicians in the present case.

▮ The respondent commission, in its brief on this hearing, attempts to justify its award on the ground that "The employee suffered disability as a result of medical treatment furnished by the employer's doctor attempting to cure a condition caused by his work." (Citing in support of that contention, *Fitzpatrick* v. *Fidelity & Casualty Co. of New York,* 7 Cal.2d 230 [60 P.2d 276], and *Georgia Casualty Co.* v. *Industrial Acc. Com.,* 87 Cal.App. 333 [262 P. 394].) But in the present case there was no finding that the alleged disability was the result of improper medical treatment. Naturally, if the award for alleged injury received in the course of employment as the result of arc welding flashes failed for lack of competent evidence, there would be no foundation to support an award for damages incurred on account of improper medical treatment. Under such circumstances such an award for improper medical treatment would not be for an injury received "in the course of his employment." There is no merit in that contention.

The award is annulled.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied December 10, 1948, and respondents' petition for a hearing by the Supreme Court was denied January 6, 1949. Shenk, J., and Carter, J., voted for a hearing.