[Civ. No. 11006. Third Dist. June 8, 1965.]

PETER KIEWIT SONS et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and MARVIN U. McLAUGHLIN, Respondents.

Mento, Buchler & Littlefield and Theodore H. Morrison for Petitioners.

Sheldon St. Clair and Leep & Saunders for Respondents.

FRIEDMAN, J.—Respondent Marvin U. McLaughlin applied for workmen's compensation benefits, naming three employers for whom he had worked during a period of approximately four years preceding his disability. Peter Kiewit Sons was the last employer. For purposes of clarity and convenience we shall refer to the earlier employers as Employers No. 1 and No. 2. The Industrial Accident Commission awarded McLaughlin compensation for temporary total disability and medical expenses payable entirely by the insurance carrier for Peter Kiewit Sons. Kiewit and its insurance carrier seek annulment of the award, claiming lack of substantial evidence and contending in any event for the award's apportionment among the several employers.

McLaughlin worked as a laborer, mostly on construction jobs. On January 7, 1959, he was working for Employer No. 1 and suffered an injury to his back as he was lifting an 80-pound rail. Prior to that accident he had no difficulty with his back, shoulders or legs. He was off work for four days, returned to his job and performed light tasks for a few weeks, then resumed his regular tasks. He developed some pain in his back, legs and left shoulder. A short time later he commenced to suffer from arthritic symptoms in his hands and arms. These arthritic symptoms had no apparent relationship to the back injury.

McLaughlin worked for Employer No. 2 from August 1960 to November 1961 doing heavy labor as a chuck tender. He worked in Nevada for several months, then drew unemployment disability benefits for several months in 1962 because of ailments in his back, legs and left shoulder. In August 1962 he returned to work for Employer No. 2 for a few weeks. He continued to have trouble with his back and legs.

From January to May 1963 McLaughlin worked as a chuck tender for Peter Kiewit Sons.[1] On May 2, 1963, he had to lay off the job because of his physical difficulties. There is a dispute whether the difficulty consisted only of the arthritis in his shoulder, arms and hands, or whether back pain was also a factor.

In December 1963 McLaughlin filed compensation applications against all three employers. In the case of Employer No. 1, he claimed a specific injury occurring on January 7, 1959. In the other two cases he charged "repeated trauma" to his back suffered in the course of his employment. After a consolidated hearing, the following findings and award were made: (1) An industrial injury was sustained by McLaughlin on January 7, 1959, arising out of his employment by Employer No. 1, but it caused no temporary disability. The physical condition being not yet stationary, the issues of permanent disability and apportionment of liability were deferred. (2) Employment by Employer No. 2 from 1960 to 1962 did not cause an industrial injury. (3) McLaughlin

---

[1] Evidence of the nature of Peter Kiewit's business is nil and of McLaughlin's actual tasks, meager. At the hearing the phrase "chuck tender" was accepted as an adequate description of these tasks. Neither the record nor the Dictionary of Occupational Titles (U.S. Empl. Service, 1949), supplies a definition of this term; and the parties have suggested none. Apparently Peter Kiewit is a construction contractor and McLaughlin a construction laborer whose tasks required him to do considerable bending and lifting and carrying of heavy materials.

sustained an industrial injury to his back on May 2, 1963, in the course of his employment with the Kiewit firm. This injury caused temporary total disability commencing on May 2, 1963, and continuing indefinitely thereafter. The condition not being stationary, the issues of permanent disability and apportionment were deferred. Temporary disability of $70 a week commencing May 2, 1963, was awarded against Kiewit's insurer.

Responding to a petition for reconsideration, the referee reported to the commission that "there is substantial evidence that applicant has disability to his back, although the actual disability may extend more to his arms and hands [and] that his condition became disabling on May 2, 1963, as a result of repeated trauma to his back, or shoulders and arms while employed by the petitioner herein. . . ." The commission denied reconsideration.

We summarize the medical evidence: Dr. Bonar had seen the applicant after the 1959 accident and diagnosed his condition as an acute, severe back strain. A few months later McLaughlin commenced visits to Dr. Thomas, his family doctor. His primary complaints were pain in the shoulders, wrists and hands. He was treated for arthritis and bursitis. His eligibility for state unemployment disability payments in 1962 was based on "arthritis left shoulder region & back." He stated that he was having trouble with his back and legs during the period antedating his employment by Kiewit. During his two intervals of employment with Employer No. 2, he complained of trouble with his back and legs. Two days after he commenced work for Kiewit he was having trouble with his back. He testified that the reason he had to stop working for Kiewit on May 2, 1963, was because the arthritis in his shoulders, arms and hands had become worse. On the same day he visited Dr. Thomas, complaining specifically of arthritis in his hands and wrists. The complaints, if any, of back trouble were entirely secondary. In September 1963 McLaughlin's back problem caused Dr. Thomas to prescribe a lumbosacral belt. In December 1963 Dr. Thomas noted complaints of back pain with radiation to the lower extremities. A letter of Dr. Thomas described the latter as "typical disc symptoms" and suggested myelograms. The report of Dr. Fowler, who saw McLaughlin in December 1963 and January 1964, described complaints of pain in the hands and wrists and flareups of arthritic swelling. Dr. Fowler drew a tentative diagnosis of "acute arthritis, type undetermined, prob-

ably early rheumatoid'' and said that the claimant should be considered as disabled, at least temporarily. McLaughlin testified that his ''big problem'' at that time was his shoulder, arms and hands. X-rays were taken about this time and gave the roentgenologist an impression of ''early narrowing and sclerosis of the lower apophyseal joints of the cervical spine on the left.'' In February 1964 Dr. Cox noted complaints of swollen hands and wrists and a ''little bit'' of back pain. Dr. Cox found excellent mobility of McLaughlin's back and ''nothing wrong'' with it. He said that the symptoms were not suggestive of disc pathology.

Petitioners make a twofold attack on the commission's finding, claiming (1) a lack of substantial evidence of disability due to back injury, and (2) absence of substantial evidence of causation in Kiewit's service. There is no evidence of any specific industrial accident suffered in the employ of Kiewit. The commission's brief rests upon the contention that this is a case where Kiewit's service ''either caused, aggravated or exacerbated applicant's back condition to the point of rendering it disabling.''

Compensable disability may be caused by the cumulative contribution of daily work strains, as well as by a single traumatic incident. (*Firemen's Fund Indem. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 831, 834 [250 P.2d 148]; *Beveridge* v. *Industrial Acc. Com.*, 175 Cal.App.2d 592, 594-595 [346 P.2d 545]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, 231 Cal. App.2d 111, 116-117 [41 Cal.Rptr. 628]; 2 Hanna, The Law of Employee Injuries and Workmen's Compensation 133-134.) ''Microtraumata'' is a convenient medical term, describing the piecemeal physical strains whose cumulative effect is disability. (See *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, *supra*, 231 Cal.App.2d at pp. 116, 117.) The phenomenon is characteristic of compensation cases involving disabling back conditions among persons engaged in heavy manual labor. The disabling process may have its origin in a specific industrial accident, as in the *Beveridge* case, *supra*. It may commence with a nonindustrial pathology, e.g., *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, *supra*. Ultimate disability may be caused by the aggravating effect of industrial work strains upon the pre-existing pathology. Whether the applicant's work contributed to the ultimate disability is a question of fact for the Industrial Accident Commission, whose determination is binding upon the courts when supported by substantial evidence. (*Argonaut Ins. Co.* v. *Industrial Acc. Com.*,

*supra*, 231 Cal.App.2d at p. 115; *Beveridge* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d at p. 597.

■ The acceleration, aggravation or "lighting up" of a preexisting nondisabling condition is an injury in the employment causing it. (*Fred Gledhill Chevrolet* v. *Industrial Acc. Com.,* 62 Cal.2d 59, 61 [41 Cal.Rptr. 170, 396 P.2d 586].)

■ The employer takes the employee as he finds him; thus compensation may be granted even though the employee's physical condition subjects him to industrial disability to which a healthy person would be relatively immune. "In such cases full compensation for the entire disability suffered is recoverable although the physical condition of the employee contributed to and increased the disability caused by the injury or prolonged and interfered with healing and recovery. ■ In other words, there is no authority for prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation caused by the employee's physical condition on the other." (*Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 617-618 [52 P.2d 215].)

■ McLaughlin's application charged "repeated trauma" in Kiewit's service. There was no evidence of a specific accident in that service. The evidence pointed to four possible sources which, combined or separately, resulted in the employee's inability to work: (1) the industrial back injury of 1959; (2) normal progress of nonindustrial arthritis; (3) subjective aches, pains and claims, and (4) the cumulative effect of industrial microtraumata. In the light of this evidence, we have real difficulty in appraising the referee's finding, which recites that McLaughlin "sustained an injury" on May 2, 1963, the last day he worked for Kiewit. Either the finding meant to ascribe cumulative trauma in Kiewit's service as the sole cause of disability, or it meant to designate these trauma as an aggravating factor which ripened nondisabling physical conditions into an inability to work. The referee's report to the commission following the petition for reconsideration is consistent with the latter view of the finding. Construed in the light of the record, the finding is one of a disability produced by the cumulative industrial aggravation of preexisting physical impairments.

Quite aside from the character of McLaughlin's disability, the medical evidence fails to ascribe it to anything occurring in Kiewit's service. There is no medical testimony and nothing in the reports of the examining physicians pointing to the work strains of Kiewit's service as the cause or probable cause

of the aggravation or lighting up. ▮ The applicant had the burden of proving a causal relationship between work and disability. (*Newton* v. *Industrial Acc. Com.*, 204 Cal. 185, 188-189 [267 P. 542, 60 A.L.R. 1279] ; *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 120 Cal.App.2d 423, 426 [261 P.2d 25].) ▮ The occurrence of an injury during the course of an employment does not mean that it arises out of or because of that employment. (*City & County of San Francisco* v. *Industrial Acc. Com.*, 117 Cal.App.2d 455, 458 [256 P.2d 81].) ▮ ''An award based solely upon evidence tending to prove only a possibility of industrial causation is conjectural and cannot be sustained.'' (*Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685, 687 [203 P.2d 747].)

The employer and carrier assert that expert medical evidence of industrial causation is indispensable here; while the commission contends that its finding of causation was not a product of guess or conjecture, but rather a logical inference drawn from experience in dealing with industrial injuries and based upon the knowledge that persons subjected to heavy work will often have back problems.

▮ Where an issue is exclusively a matter of scientific medical knowledge, expert evidence is essential to sustain a commission finding; lay testimony or opinion in support of such a finding does not measure up to the standard of substantial evidence. (*City & County of San Francisco* v. *Industrial Acc. Com., supra,* 117 Cal.App.2d at pp. 459-460; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 88 Cal.App.2d 410, 413 [199 P.2d 12] ; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 47 Cal.App.2d 494, 500-501 [118 P.2d 334].) ▮ Expert testimony is necessary ''where the truth is occult and can be found only by resorting to the sciences.'' (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 184 [231 P. 996].) In some cases the issue, while of a medical nature, is sufficiently within the grasp of lay experience and understanding to permit a finding without expert medical evidence. (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 89, 95-96 [199 P.2d 302] ; *Employers etc. Corp.* v. *Industrial Acc. Com.*, 42 Cal.App.2d 669, 671 [109 P.2d 716] ; *County of Los Angeles* v. *Industrial Acc. Com.*, 14 Cal.App.2d 134, 137-138 [57 P.2d 1341].)

None of the cases dispensing with expert medical evidence parallels the present. The *Liberty Mutual* case involved a decision on the degree of permanent disability caused by a loss of the hand's grasping power which, the court concluded,

the Industrial Accident Commission was fully qualified to decide. The court observed: "We are not dealing with the question of the subjective scientific cause of an injury. It is clear that the injury caused the disability. The issue is only the extent of that disability." (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com., supra,* 33 Cal.2d at p. 96.) *Employers etc. Corp.* v. *Industrial Acc. Com., supra,* held that whether the employee was suffering disabling pain was a question susceptible of nonexpert testimony. *County of Los Angeles* v. *Industrial Acc. Com., supra,* held that the permanence of a disability arising from three back accidents superimposed upon arthritis could be decided without expert testimony.

None of these cases involved the issue of industrial causation. That issue may run a gamut from the blatantly obvious to the scientifically obscure. If a painter falls to the ground as the result of a scaffold collapse, breaking his leg, common sense dispenses with medical evidence of causation. Other sources of disability are less available to lay discernment. In *City & County of San Francisco* v. *Industrial Acc. Com., supra,* 117 Cal.App.2d 455, the court annulled a finding of industrial causation of a fatal heart attack, asserting the necessity of medical evidence. *Guarantee Ins. Co.* v. *Industrial Acc. Com., supra,* 88 Cal.App.2d 410, held that lay evidence was not adequate to establish impairment of vision by arc welding flashes. In *Pacific Employers Ins. Co.* v. *Industrial Acc. Com., supra,* 47 Cal.App.2d 494, the connection between an industrial leg trauma and varicose ulcers was held to be outside the competence of lay witnesses.

Examples might be multiplied. They condense into the general proposition that the medical cause of an ailment is usually a scientific question, requiring a judgment based upon scientific knowledge and inaccessible to the unguided rudimentary capacities of lay arbiters. (See 2 Wigmore on Evidence (3d ed.) §§ 558-568, pp. 638-665; 20 Am.Jur., Evidence, § 867, pp. 730-732.)

Back disabilities in particular shout loudly for expert advice. No human ailment has produced more medicolegal headaches than the aching back. This delicately articulated structure of nodulated bones, cushioned by cartilaginous bodies and gelatinous material, interlaced by the complex and sensitive fibers of the cerebrospinal nervous system and held in array by strands and cords of muscular and ligamentous tissue, is vulnerable to a vast and bewildering variety of traumatic, pathological, deteriorative ailments and neurotic

manifestations, singly and in diverse combinations. Precise diagnosis often baffles neurologists and orthopedists. In assessing the respective roles of trauma and predisposing conditions and of objective and subjective complaints, subtle value judgments may be unavoidable.[2] In the face of this anatomical, physiological and psychological intricacy, semantically dubious, pseudomedical jargon infiltrates the conflux of medicine and jurisprudence. Whiplash, traumatic arthritis, traumatic neurasthenia and railroad spine are solecisms in current or past fashion. These verbal conveniences tempt the medically untrained into complacent substitution of simplicity for complexity. In a field which forces the experts into hypothesis, unaided lay judgment amounts to nothing more than speculation.

We have cited the three California decisions which, to our mind, demonstrate and shape the concept of industrial microtraumata as a proximate cause of compensable disability. *Firemen's Fund Indem. Co.* v. *Industrial Acc. Com., supra,* 39 Cal.2d 831, involved a stroke caused by tension and overwork. *Beveridge* v. *Industrial Acc. Com., supra,* 175 Cal. App.2d 592, and *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 231 Cal.App.2d 111, like the present case, involved disabling back conditions ascribed to a combination of work strains and preexisting ailments. In all three cases there was substantial medical testimony on the score of causation. Like the present case, *Beveridge* and *Argonaut* posed the fact finder with a choice between disease and employment as a proximate contributing cause of back disability. Both refer approvingly to the following statement of doctrine in *California etc. Exchange* v. *Industrial Acc. Com.,* 76 Cal.App.2d 836, 842 [174 P.2d 680] : " 'It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. *The substantial question is whether the diseased condition was the*

---

[2]The following are some of the many medicolegal commentaries which demonstrate the difficulty and complexity of causal diagnoses in back disability cases: *The Aching Back—A Symposium,* 5 Current Medicine for Attorneys (Feb. 1958) p. 4; Shabat and Flaxman, *Aggravation of Preexisting Ailments by Trauma — Arthritis,* 1 Medical Trial Technique Quarterly (Sept. 1954) p. 53; Flaxman, *Low Back Affections—Aggravation of Preexisting Ailments,* 2 Medical Trial Technique Quarterly (Mar. 1956) p. 19; Lankin, *Trauma in "Arthritis,"* 3 Amicus Curiae (June 1959) p. 4; Humphries and Wasmuth, *Diagnosis and Treatment of the "Modern" Backache,* 7 Cleveland-Marshall L.Rev. 274 (May 1958); Frankel, *Low Back Injuries—The Ruptured Disc Syndrome,* 11 So.Caro. L.W. 171 (Winter 1959); *Current Medico-Legal Problems Symposium, Low Back Injuries,* 29 Tenn. L.Rev. 153, 186 (Winter 1962).

*cause, or whether the employment was a proximate contributing cause.* In the former case, no award can be made; in the latter, it ought to be made.'" (*Beveridge* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d at p. 598.)

The same "substantial question" confronted the commission in this case. The question was a medical one which the commission could answer only with the aid of expert medical opinion. In the absence of competent medical evidence of work causation, the referee's finding that the injury arose out of the claimant's employment by Kiewit had no substantial evidentiary support. Since the award must be set aside, we do not reach the question of apportionment.

The award is annulled and the cause remanded to the Industrial Accident Commission for proceedings in accordance with this decision.

Pierce, P. J., and Regan, J., concurred.