945 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lewis EISENBERG, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
 No. 88-6093.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 10, 1991.
Decided Oct. 8, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lewis Eisenberg appeals the judgment against him in his action for wrongful termination in violation of public policy. He also appeals the denial of his untimely motion for a jury trial. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 I.
 BACKGROUND
 
 3
 On January 29, 1979, Eisenberg accepted an offer of employment as a claims supervisor from Insurance Company of North America (ICNA). In May of 1983, for economic reasons, ICNA eliminated two positions at the facility where Eisenberg was employed. On May 25, 1983, Eisenberg was notified that his position was one of the two eliminated. Pursuant to an ICNA policy, Eisenberg was also informed that he would remain on the company's payroll until June 23, 1983 and that his formal termination would be effective as of August 18, 1983. Eisenberg was further advised that between May 25, 1983 and July 20, 1983 attempts would be made to relocate him within the company. Such attempts were unavailing, and on August 18, 1983 Eisenberg was formally terminated.
 
 
 4
 Eisenberg sued for wrongful termination, arguing that he was maneuvered into a position that could be easily terminated. He alleges that his supervisors were tired of his efforts to increase the staff so that claims handling would not be delayed, and of his refusal to violate the law when clients requested it. A district court entered summary judgment for ICNA which the Ninth Circuit reversed. Eisenberg I, 815 F.2d 1285.
 
 
 5
 In February 1985, Eisenberg's original attorney declined to ask for a jury trial because he believed that Eisenberg was not emotionally stable enough for a jury trial. Shortly before summary judgment was filed in the district court in December 1985, Eisenberg retained new counsel. His new attorney determined that Eisenberg was then able to benefit from a jury trial and moved for one in January 1986. After the reversal of summary judgment in April 1987, the motion was denied.
 
 
 6
 The district court judge ruled against Eisenberg in a bench trial, and Eisenberg appeals the judgment and the denial of his jury trial motion.
 
 II.
 JURY TRIAL
 
 7
 Eisenberg argues that his untimely jury trial motion should have been granted because its untimeliness was due to a change in circumstances, not mere oversight. A party in a civil case must demand a jury trial within 10 days after service of the last pleading, or the right to a jury trial is waived. Fed.R.Civ.P. 38(b) and (d). Nevertheless, the court may, in its discretion, grant a later motion for a jury trial. Fed.R.Civ.P. 39(b). In considering untimely requests for a jury trial, the Ninth Circuit has said, a court must deny such motions "unless some cause beyond mere inadvertence is shown." Mardesich v. Marciel, 538 F.2d 848, 849 (9th Cir.1976) (per curiam).
 
 
 8
 In this case, Eisenberg fails to show such cause. His change in counsel merely resulted in a change of jury trial strategy. Were the district court to permit such a late motion, any party failing in the future to timely request a jury could avoid penalty simply by changing counsel.
 
 
 9
 Furthermore, "[t]he denial of a motion made under [Rule 39(b) ] is to be sustained unless an abuse of judicial discretion is shown." Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614, 621 (9th Cir.1979). There is no evidence of an abuse of discretion by the District Court.
 
 III.
 PUBLIC POLICY
 
 10
 This court will not set aside the district court's findings of fact unless they are clearly erroneous. Taylor v. Moram Agencies, 739 F.2d 1384, 1385 (9th Cir.1984). Conclusions of law are reviewed de novo. Id. at 1386. To succeed in his argument that he was terminated in violation of public policy, Eisenberg must first establish that a public policy exists. The district court was correct that Eisenberg has not crossed this first hurdle.
 
 
 11
 Eisenberg argues that he was terminated for attempting to keep the caseload of claims adjusters at ICNA within limits required by the public policy of California. It is true that Eisenberg I held that
 
 
 12
 termination in retaliation for failure to violate an Insurance Department guideline is contrary to public policy. It is clear that the caseload guidelines of the Department represent a public policy to insure that each insurance claim receives adequate consideration.
 
 
 13
 815 F.2d at 1289-90. However, Eisenberg has since conceded that no such Insurance Department guideline exists.
 
 
 14
 Eisenberg's concession would not be fatal if Eisenberg could point to another guideline, statute, or case that establishes a maximum caseload limit for worker's compensation claims adjusters. However, even Eisenberg admits that the Industrial Relations Department guideline upon which he relies does not apply to the facts of this case. The guideline is a suggested, not mandatory, maximum for claims adjusters of self-insured employers. It says nothing about claims handled by insurance companies such as ICNA on behalf of insured employers.
 
 
 15
 The California constitution does expressly declare a social public policy that the workers' compensation system secure compensation "expeditiously, inexpensively, and without encumbrance of any character...." Cal. Const. Article XIV, § 4. But this statement of purpose does not translate into a public policy requiring particular caseload levels for claims adjusters. This is especially so when the Industrial Relations Department has declined to suggest such a caseload level although it has done so in other circumstances.
 
 
 16
 Whether there should or should not be a public policy establishing a maximum caseload level for adjusters handling workers' compensation claims is not the issue. We hold, as a matter of law, that such a public policy currently does not exist in California.
 
 
 17
 Eisenberg also argues that Peter Kiewit Sons v. Industrial Accident Comm'n, 234 Cal.App.2d 831, 44 Cal.Rptr. 813 (1965) establishes a public policy that medical advice must be consulted when refusing insurance coverage and that his refusal to violate that policy led to his termination. Peter Kiewit Sons requires the Workers' Compensation Appeals Board to require evidence from medical experts in medically complex cases. Id. at 819. It says nothing to insurance companies. Peter Kiewit Sons does not establish a public policy that affects Eisenberg's case.
 
 
 18
 Finally, Eisenberg argues that his refusal to violate California Labor Code § 4600 at Barbara Kaufman's (representative of TWA) request, led to his termination in violation of public policy. Section 4600 guarantees to an employee the right to choose a physician within a reasonable geographic area. Eisenberg alleges that Kaufman instructed him to withhold this information from TWA employees so that they would see only TWA physicians. Kaufman denied that she ever asked Eisenberg to violate the law. Eisenberg's supervisors also testified that they never instructed him to violate the law. The district court believed Kaufman and Eisenberg's supervisors rather than Eisenberg. This finding is not clearly erroneous.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3