Filed 1/22/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASHLEY NAVARRO,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>GORETTI CERVERA,<br><br>     Defendant and Respondent. | A169830<br><br>(Alameda County Super. Ct. No. HF18915010) |

Ashley Navarro appeals from an order denying her request to renew her domestic violence restraining order (DVRO) against Goretti Cervera. Navarro asserts the trial court abused its discretion in concluding her fear of future abuse was unreasonable. We agree and reverse with directions that the trial court grant the renewal request and decide whether the DVRO should be renewed for five or more years, or permanently.

## BACKGROUND

Navarro and Cervera dated for approximately eight years. Both prior to dating and during their relationship, Cervera struggled with her mental health, including diagnoses of borderline personality disorder, general anxiety, and major depressive disorder. Cervera also attempted suicide on multiple occasions during their relationship and had a fascination with murder-suicides. In addition, Cervera told Navarro that she thought about committing mass shootings in public places. As a result, Cervera had, at

1

various times, been placed on suicide watch and Welfare and Institutions Code section 5150 (section 5150) holds.

Navarro and Cervera broke up in spring 2018. A few months later, at the end of July, Navarro received calls and emails from three members of Cervera's immediate family stating that Cervera had "disappeared" and they were concerned Cervera "was going to come find [Navarro] and try to hurt [her] and that [Cervera] might turn violent toward [Navarro]."

That same day, unbeknownst to Navarro, Cervera was waiting in the parking lot at Navarro's workplace. As Navarro arrived around 5:30 p.m., parked, and was about to exit her vehicle, Cervera attempted to open Navarro's car door and began yelling at Navarro to let her into the vehicle. After Navarro managed to lock the door, Cervera attempted to reach through the window into the vehicle. While attempting to enter the vehicle, Cervera was yelling various false accusations about their relationship. Navarro was "terrified" because of how aggressively Cervera approached the vehicle. According to Navarro, police were contacted, and they located Cervera hiding between two cars with a large kitchen knife hidden nearby. Navarro stated Cervera acknowledged that she intended to kill Navarro and that she had previously broken into Navarro's apartment with the intent to kill Navarro and then kill herself. Cervera was sent to a psychiatric hospital on a section 5150 hold. Navarro obtained an emergency protective order and a criminal protective order that expired in August 2018.

Navarro filed a request for a DVRO, a hearing ensued, and the court issued a five-year DVRO. While not considering the attack an attempted murder because a police officer did not testify as to Cervera's statements to the police, the court found Navarro had a reasonable apprehension of physical harm. The court noted Cervera "may have been emotionally

2

disturbed," "appeared uninvited and wanted to enter [Navarro's] car," "tried to pull the door open against [Navarro's] will," and "tried to insert her hand inside the car causing [Navarro] apprehension of physical harm." The restraining order prohibited Cervera from "harass[ing], attack[ing], strik[ing], threaten[ing], assault[ing], contact[ing] directly or indirectly, or tak[ing] any action to obtain [Navarro's] address or location."

Approximately a year later, in July 2019, Cervera violated the DVRO by contacting Navarro via email and text. These communications apologized for various actions, professed Cervera's love and admiration for Navarro, acknowledged "I'm not supposed to contact you," and stated, "I loved you then and I love you now" and "I don't care if I go to jail, you are more important." Navarro reported these communications to the police and obtained a three-year criminal protective order against Cervera. A few months later, in December 2019, Navarro received a letter indicating it was from Cervera, in which Cervera sought to reunite with Navarro. While Cervera admitted sending the email and text messages, she denied sending the letter.

In May 2023, Navarro filed a timely application seeking permanent renewal of the DVRO. The application stated Cervera violated the existing DVRO by texting, emailing, and mailing communications to Navarro. Navarro further claimed she was afraid Cervera would harm her in the future because Cervera: (1) admitted to attempting to kill her by first breaking into her apartment and then discovering Navarro's work schedule and waiting in the parking lot to try to kill her; (2) struggled with her mental health and suicidal feelings for many years, including prior to and during their relationship; (3) demonstrated a fascination with murder-suicides and mass shootings; (4) previously attempted to obtain a firearm despite being barred from purchasing one; and (5) was obsessive and not able to respect

3

boundaries.  Navarro noted the December 2019 letter contained statements that were disturbingly similar to comments Cervera made to Navarro prior to the 2018 incident.

Cervera opposed the request on the basis that Navarro's fears were not reasonable because: (1) the 2018 incident was a result of a mental health crisis that had since been resolved; (2) she did not have access to weapons; and (3) she had not had any contact with Navarro in four years and did not want to contact her.

At the outset of the hearing for the permanent DVRO, counsel for Navarro stated she would be willing to submit on the pleadings rather than provide testimony because "my client is in an emotional situation just being in the proximity of [Cervera]."  In response, the court asked whether the parties had "an opportunity to talk to each other to find some common ground that would accommodate the interests of both of your clients?"  Navarro's counsel stated they were "unable to reach an agreement."  The court then listed options the parties could consider, such as "agreeing to a shorter period of time," or "forgo the renewal and enter into a mutual stay away and no contact agreement."  The court noted such orders are not restraining orders but do "hold parties accountable."  Navarro's counsel responded that they considered those options, but Navarro needed "the ability to have law enforcement involved" because of "the severity of the underlying incident and the fact that there have been multiple violations since the restraining order has been in place."  The court responded, "that's fine," but then commented, "I always think it's advisable to take matters into your own hands . . . because I don't know how this case is going to shake out. . . . [Y]ou just never

know.  If you all want to take that chance that is absolutely your prerogative."[1]

The court then proceeded with the hearing.  Navarro testified that Cervera violated the original DVRO by sending her an email and text.  While those communications did not contain overt threats, Cervera "had apologized previously before she attempted to take my life so it didn't come off as an apology to me."  As noted above, Cervera's actual messages—submitted to the trial court as part of her request to renew the DVRO—did not merely apologize but also expressed sentiments of love and acknowledged that Cervera was knowingly violating the DVRO ("I loved you then and I love you now"; "I don't care if I go to jail, you are more important.").

Navarro averred that Cervera also violated the DVRO by sending the 2019 letter.  While the letter was unsigned, it had Cervera's name as the sender on the envelope and her name in the body of the letter.  Navarro was extremely distressed to receive the letter and concerned that Cervera was going to search for and find her.  Navarro noted that at the time of the 2018 assault, Cervera was able to track down her location despite Navarro working an inconsistent schedule at six different libraries.  Cervera denied sending the letter and suggested it may have been sent by Navarro's sister.

Navarro further testified that Cervera struggled with and did not "respect a request for space and boundaries" during their relationship.

---

[1] There are times it may be appropriate for the court to encourage settlement discussions.  However, courts should carefully consider the evidence underlying the initial DVRO in assessing whether to do so, particularly in circumstances where the underlying conduct involved significant physical danger, the restrained party has violated the DVRO, and the victim has expressed emotional distress at being in the proximity of the restrained party.

Navarro believed Cervera stopped contacting her after 2019 only because she filed a police report and obtained a criminal protective order.

Navarro explained that purported changes to Cervera's medication did not alleviate her concerns because Cervera had dealt with mental health struggles during their entire relationship. These struggles occurred despite Cervera entering different therapy programs and taking different medications. Because of this history, Cervera's mental health is "still cause for concern" because even during treatment she "t[ook] those actions and she has had an obsessive personality in the past where she can't let things go."

In opposition, Cervera testified that the 2018 incident "was an isolated incident that was very unfortunate" and triggered by a mental health crisis and medication that made her feel paranoid and suicidal; she stopped taking the medication after the incident. She did not want to hurt Navarro and did not think she was a danger to Navarro. Cervera testified she was diagnosed with bipolar disorder in 2019. She did not provide any medical documentation or testimony in support of her statements regarding diagnoses or medications. Cervera's purpose in contacting Navarro in 2019 was to give Navarro "some comfort" that Cervera would not hurt her in the future. Despite the communications occurring almost a year after the 2018 incident and after she stopped the allegedly problematic medication, Cervera claimed she was "still under the effects of my mental health crisis" when she sent the text and email messages. She denied making any attempts to locate Navarro since 2019.

The court denied Navarro's request for a permanent DVRO. The court found both parties credible and took into consideration their testimony as well as the 2018 incident that led to the original DVPA restraining order. The court believed Navarro's fear to be genuine and stated the 2018 "incident

6

was serious and traumatic," but said it was only one incident that took place shortly after their breakup and that Cervera "accepted responsibility for her actions at that time." The court credited Cervera's unsubstantiated contentions that her 2018 conduct had been a result of medication side effects and that she had an updated mental health diagnosis for which she was receiving treatment.

While the court acknowledged Cervera violated the restraining order in 2019, it found Navarro had "not satisfied her burden of showing reasonable apprehension of future abuse by a preponderance of the evidence." Despite declining to exercise its discretion to renew the DVRO, the court cautioned Cervera not to contact Navarro: "[A]lthough the court has denied the request for renewal and there is no legal reason prohibiting you from contacting Ms. Navarro please don't. This has been a really unfortunate chapter for both of the parties and it is the court's hope that you can both put this behind you. If you do not heed the Court's suggestion you may well end up back in court again."

## DISCUSSION

### I. Statutory Framework

The Domestic Violence Prevention Act (Fam. Code,[2] § 6200 et seq.; DVPA) authorizes the trial court to issue a DVRO "if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300.) For purposes of the DVPA, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury; sexual assault; placing a person in reasonable apprehension of imminent serious bodily injury to that person or another; or engaging in behavior that could be enjoined pursuant to section 6320. (§ 6203, subds. (a)(1)–(4).) Section 6320

---

[2] All further undesignated statutory references are to the Family Code.

7

covers not only "molesting, attacking, striking, stalking, threatening, sexually assaulting, [and] battering," but also "harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, [and] disturbing the peace of the other party . . . ." (§ 6320, subd. (a).)

"Renewal of a DVRO is authorized by Family Code section 6345, subdivision (a), which permits a court to extend the term of an order 'without a showing of further abuse since the issuance of the original order.' The renewal may be 'for five or more years, or permanently, at the discretion of the court.'" (*G.G. v. G.S.* (2024) 102 Cal.App.5th 413, 421 (*G.G.*), quoting § 6345, subd. (a).)

In evaluating whether to grant renewal of a DVRO, "the question is whether a reasonable person, in the petitioner's circumstances, would fear repetition of the abuse if the order expired." (*G.G.*, *supra*, 102 Cal.App.5th at p. 421; *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179 (*Michael M.*) ["The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse."].) This question only requires petitioners to demonstrate " it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension genuine and reasonable.'" (*Michael M.*, at p. 179.)

*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*) and subsequent authority have considered three factors in assessing whether a victim has a "reasonable apprehension" of future abuse. First, "the trial court ordinarily should consider the evidence and findings on which the initial DVRO was based. [Citation.] '[T]he underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof

8

to satisfy that test.' " (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180; *Ritchie*, at p. 1291; *G.G.*, *supra*, 102 Cal.App.5th at pp. 421–422.)

Second, courts consider " 'any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?' " (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180; *Ritchie*, *supra*, 115 Cal.App.4th at p. 1291; *G.G.*, *supra*, 102 Cal.App.5th at p. 422.)

Finally, courts evaluate " 'the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities.' " (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180; *Ritchie*, *supra*, 115 Cal.App.4th at p. 1291; *G.G.*, *supra*, 102 Cal.App.5th at p. 422.) However, this factor may not be relevant if the feared abuse is physical violence because " 'the physical security of the protected party trumps all . . . burdens.' " (*G.G.*, at p. 422.) Conversely, this factor may be relevant "where the existing order focuses not on the threat of physical violence, but lesser forms of abuse—unwanted telephone calls or mail, for example." (*Ritchie*, at p. 1292.)

## II. Standard of Review

"We review the trial court's grant or denial of a DVPA restraining order request for an abuse of discretion. [Citation.] . . . ' "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." ' " (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115–116.) However, " '[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion

9

always resides in the particular law being applied by the court, i.e., in the " 'legal principles governing the subject of [the] action . . . .' " ' " (*Id.* at p. 116.)

The DVPA constitutes "a comprehensive statutory response to domestic violence, which the Legislature has identified as 'the number one health risk among women.' [Citation.] The scheme is 'broad' in its intent, and each section must therefore be broadly construed to accomplish its purpose." (*G.G.*, *supra*, 102 Cal.App.5th at p. 421; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602 ["The DVPA must be broadly construed in order to accomplish the statute's purpose."].) "Thus, 'we consider whether the trial court's exercise of discretion is consistent with the statute's intended purpose.' " (*In re Marriage of F.M. & M.M.*, at p. 116.)

## III.  Request to Renew the DVRO

The factors set forth in *Ritchie*, *supra*, 115 Cal.App.4th 1275, all support granting Navarro's request to renew the DVRO. The trial court thus abused its discretion in concluding Navarro did not establish a reasonable apprehension of future abuse.

The facts surrounding the 2018 incident are egregious and, combined with Cervera's intentional violations of the DVRO, establish the reasonableness of Navarro's ongoing fear of future abuse. Navarro's renewal petition set forth the details of the 2018 incident: Cervera broke into Navarro's apartment with the intent to kill her; fortunately, Navarro was not there. Cervera then managed to locate Navarro at work despite Navarro working at various sites with no set schedule. Cervera waited for Navarro in the workplace's parking lot to attack and kill her. When Cervera attempted to execute her plan, Navarro escaped into her car, police were contacted, and the police found Cervera hiding in the parking lot with a large kitchen knife.

10

Neither Cervera's testimony nor her response to the renewal petition disputed any of these facts; rather, she only disputed sending a 2019 letter and having any intent to obtain a firearm. Cervera acknowledged that she "believed [Navarro] had good reason" to seek the original DVRO.

As explained in *Ritchie*, the evidence and findings on which the initial order was based are often "enough in themselves to provide the necessary proof to" find the protected party's apprehension is genuine and reasonable. (*Ritchie*, *supra*, 115 Cal.App.4th at p.1291.) Such is the case here, further bolstered by undisputed evidence of further abuse. Cervera admitted sending text and email messages in violation of the DVRO and after her change in medication and new psychiatric diagnosis. And Navarro testified as to why these messages were especially concerning: "[Cervera] had apologized previously before she attempted to take my life so it didn't come off as an apology to me." Considering the seriousness of the incident giving rise to the DVRO and Cervera's subsequent violations of the DVRO, which Navarro explained followed a concerning pattern of behavior, Navarro's ongoing apprehension regarding her safety is undoubtedly reasonable barring a significant change in circumstances.

The trial court discounted Navarro's fear of future harm based on the 2018 incident by relying on three purported mitigating factors and/or changed circumstances: (1) the 2018 attack was a single, isolated incident of abuse; (2) the attack was triggered by a medication Cervera since discontinued; and (3) Cervera obtained a new mental health diagnosis and was receiving treatment. None of these factors are supported by substantial evidence and none of them negate the reasonableness of Navarro's fear of future harm.

11

First, the court noted the DVRO arose from a single instance of abuse that took place in the months after the parties' relationship ended. But at issue here is not a single instance of abuse. While Cervera engaged in one act of *physical* violence, the court ignored the undisputed evidence that Cervera engaged in subsequent acts of abuse by contacting Navarro in violation of the DVRO. Section 6203, subdivision (a)(4) specifically provides that engaging in behavior that has been enjoined pursuant to section 6320 constitutes abuse for purposes of the DVPA. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [unannounced and uninvited visit and repeated contacts by phone, e-mail, and text, despite requests of no contact, " 'disturb[ed] the peace' " and constituted " 'abuse' " within the meaning of § 6320]; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 776–780, 784.) Here, the DVRO explicitly prohibited Cervera from contacting Navarro "either directly or indirectly, by mail or otherwise." Yet Cervera violated this provision approximately a year later when she contacted Navarro by, at a minimum, both email and text.

Though the court acknowledged these violations, it stated it believed Cervera's motivation—to apologize—"was genuine." Cervera's rationale for sending the communications is not an excuse because a knowing violation of a DVRO cannot be characterized "as 'a de minimis and technical violation.' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 334–335; *Michael M., supra*, 92 Cal.App.5th at p. 181 [" '[A]ny violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order.' "].) The messages indicate Cervera was aware the DVRO prohibited her from contacting Navarro, Cervera ignored the prohibition, and Navarro testified receiving the communications was very traumatic. Of note, the court found the entirety of Navarro's testimony credible.

The court further emphasized Cervera had not attempted to physically harm Navarro since 2018 or communicate with her since 2019. But "a showing of recent abuse is not required to demonstrate a reasonable apprehension of future abuse." (*Michael M.*, *supra*, 92 Cal.App.5th at p. 181.) And "the fact that a protective order has proved effective is a good reason for seeking its renewal," not its termination. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1284; § 6345, subd. (a) [renewal does not require "a showing of further abuse since the issuance of the original order"].) Between shortly after the 2018 incident and the hearing on the request for the permanent DVRO, Navarro had both a DVRO and criminal protective order in place. That these orders potentially aided in preventing ongoing abuse did not constitute substantial evidence supporting the court's ruling.

Second, the court found no reasonable risk of future harm because it was "persuaded by [Cervera's] contention that in 2018 she was experiencing side effects from her medications" and subsequently obtained an updated mental health diagnosis. This reasoning is flawed. There is no substantial evidence in the record to support the finding that Cervera's attack on Navarro was triggered by medication. The only evidence was Cervera's own testimony, completely unsupported by any other evidence supporting her conclusion. Generally, "the medical cause of an ailment is usually a scientific question, requiring judgment based upon scientific knowledge and inaccessible to unguided rudimentary capacities of lay arbiters." (*Peter Kiewit Sons v. Industrial Acc. Com.* (1965) 234 Cal.App.2d 831, 839; cf. *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 528 ["lay witnesses are generally competent to testify as to their own knowledge of their diseases, injuries, or physical condition"].) While Cervera testified she was suffering from paranoia at the time of the 2018 incident, nothing in the record connects her

13

paranoia to any specific medication or provides a basis for the court to find that a medication caused her behavior. Accordingly, the trial court erred in concluding Navarro's fear of future harm is unreasonable based on changes in Cervera's medication.

Nor does the record support a finding that Cervera's updated mental health diagnosis negates Navarro's fear of future harm. Navarro testified that Cervera struggled with her mental health for many years, and the record reflects Cervera had mental health diagnoses and interventions prior to the 2018 incident. Cervera did not dispute any of these facts. Despite having these mental health diagnoses and interventions, Cervera attempted to physically attack Navarro. And Cervera did not dispute her goal at that time was to kill Navarro. Nothing in the record explains why Cervera's new mental health diagnosis and treatment are meaningfully distinct from her past treatments such that Navarro's fear of future harm is now unreasonable.[3]

Finally, the record does not contain evidence of changed circumstances such that "the restrained and protected parties [have] moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order." (*Ritchie, supra*, 115 Cal.App.4th at p. 1291.) To the contrary, during the pendency of the DVRO Cervera moved to Southern California—where Navarro lives—and was not in a relationship at the time of the renewed DVRO hearing. (Contra *Ritchie*, at p. 1293 [300-mile separation between

---

[3] We need not address whether renewal of the DVRO would impose a burden on Cervera because burdens are not relevant if the feared abuse includes fear of physical violence. (*Ritchie, supra*, 115 Cal.App.4th at p. 1292.)

14

parties who had both remarried other people constituted a "dramatic[ ]" change in circumstance].)

Despite these facts, the court elected only to warn Cervera of the consequences of future violations. But the trial court's "warning" to Cervera "suggest[s] that the trial court believed there was a need to admonish [Cervera] from the bench that [s]he must continue to stay away and have no contact with [Navarro], but without giving [Navarro] the legal protection of a restraining order." (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 562–563.) The trial court's comments thus serve to further "bolster our conclusion that [Navarro] had demonstrated a reasonable apprehension of future abuse." (*Id.* at p. 562.)

Based on the foregoing, it was an abuse of discretion to deny renewal of the DVRO. The trial court was required to broadly construe the DVPA when assessing the reasonableness of Navarro's fear. Instead, by giving greater weight to Cervera's unsubstantiated justifications for her abuse and DVRO violations rather than considering the impact of those actions on Navarro's sense of safety, the court abused its discretion.

## DISPOSITION

The order denying Navarro's request for a renewal of DVRO is reversed and remanded with instructions to grant the renewal request. On remand, the court is instructed to decide in the first instance whether the DVRO should be renewed for five years or more, or permanently. (See *Cueto v. Dozier*, *supra*, 241 Cal.App.4th at p. 562; *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398, 401.)

Because respondent did not appear on appeal, neither party shall recover costs. (Cal. Rules of Court, rule 8.278(a)(5).)

15

_____
PETROU, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
RODRÍGUEZ, J.


A169830/*Navarro v. Cervera*

_Navarro v. Cervera_ (A169830)


Trial Court:             Alameda County Superior Court


Trial Judge:             Hon. Keith Fong


Attorneys:

      Horvitz & Levy, Jeremy Brooks Rosen, Rebecca Anne Marcyes, Emily V. Cuatto, Arianna Marie Lopez; Family Violence Appellate Project, Arati Vasan, and Jennafer Dorfman Wagner for Plaintiff and Appellant.


      Goretti Cervera, in pro. per for Defendant and Respondent.